EXHIBIT
A

**VIRGINIA:**

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

FILED
CIVIL INTAKE
2026 MAR -6 A 9:38
CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

| | | |
|---|---|---|
| LINDSAY CHEVROLET, L.L.C.<br><br>-and-<br><br>LINDSAY FORD, LLC,<br><br>-and-<br><br>LINDSAY MOTORS, LLC<br><br>-and-<br><br>LINDSAY MANAGEMENT COMPANY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br>Serve: Corporation Service Co., R.A.<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>(City of Richmond)<br><br>-and-<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY<br>Serve: Corporation Service Co., R.A.<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>(City of Richmond)<br><br>Defendants. | ) | 2026 03849<br><br>Civil Action No. ____________ |

**COMPLAINT**

COME NOW the plaintiffs, Lindsay Chevrolet, L.L.C. ("Lindsay Chevrolet"), Lindsay Ford, LLC ("Lindsay Ford"), Lindsay Motors, LLC ("Lindsay Motors"), and Lindsay Management Company, LLC ("Lindsay Management") (together, "Lindsay"), by counsel, and for their complaint state the following:

**Parties**

1. Lindsay Chevrolet is a limited liability company organized and existing under the laws of the Commonwealth of Virginia.

2. Lindsay Ford is a limited liability company organized and existing under the laws of the Commonwealth of Virginia.

3. Lindsay Motors is a limited liability company organized and existing under the laws of the Commonwealth of Virginia.

4. Lindsay Management Company is a limited liability company organized and existing under the laws of the Commonwealth of Virginia.

5. Defendant Zurich American Insurance Company ("Zurich American"), is a corporation organized and existing under the laws of the State of New York and is licensed and authorized to transact insurance business in the Commonwealth of Virginia.

6. Defendant American Guarantee and Liability Insurance Company ("AGLIC") is a corporation organized and existing under the laws of a state other than Virginia and is licensed and authorized to transact insurance business in the Commonwealth of Virginia.

7. Zurich American and AGLIC are sometimes referred to collectively as "Zurich" in this Complaint.

## Jurisdiction & Venue

8. This Court has jurisdiction over this case pursuant to Virginia Code §§ 17.1-513 and 8.01-184.

9. This Court has jurisdiction over Zurich pursuant to Virginia Code § 8.01-328.1(1), in that the cause of action alleged herein arose from Zurich's transaction of business in the Commonwealth of Virginia, including the issuance and performance of insurance policies to Virginia insureds.

10. Venue is appropriate in this Court pursuant to Virginia Code § 8.01-262.

## Facts

### A. The Zurich Policies and Relevant Provisions

11. At all relevant times, Zurich issued to Lindsay one or more commercial package policies, including but not limited to Policy No. ADM 5676243-02, with a policy period from July 1, 2022 to July 1, 2023 (the "Package Policy"). The Package Policy includes, among other things, an auto dealers liability coverage form issued by AGLIC and a commercial general liability ("CGL") coverage part issued by Zurich American, as well as related endorsements.

12. At all relevant times, AGLIC also issued to Lindsay one or more commercial umbrella liability policies, including but not limited to Policy No. AUC 5594956-02, with a policy period from July 1, 2022 to July 1, 2023 (the "Umbrella Policy").

13. The Zurich Policies were renewed in successive policy years (collectively, with the Package Policy and Umbrella Policy, the "Zurich Policies") and were in effect during the time period covered by the allegations in the Underlying Action (as defined below).

14. Under the Umbrella Policy, AGLIC agreed, among other things, to pay "those damages the insured becomes legally obligated to pay because of 'bodily injury', 'property damage', or 'personal and advertising injury'" in excess of applicable underlying insurance or retained limits, and to defend certain "suits" seeking such damages when no underlying insurance applies, subject to the policy's terms and conditions.

15. The Umbrella Policy contains a separate Coverage C – Casualty Business Crisis Expense insuring agreement, pursuant to which AGLIC agreed to pay, from the first dollar and regardless of fault, "casualty business crisis expense" arising from a "casualty business crisis" first commencing during the policy period, up to the applicable aggregate limit. Coverage C applies without any requirement that underlying insurance be exhausted.

16. "Casualty business crisis" is defined in the Umbrella Policy as, in substance, an event which, in the good-faith opinion of Lindsay's principal and in the absence of crisis services, has been or may be associated with damages covered by Coverage A or Coverage B, and that is accompanied by significant adverse regional or national media coverage.

17. "Casualty business crisis expense" is defined to include certain crisis-management expenses, including but not limited to reasonable and necessary fees and expenses of a crisis advisor and related communications, as well as specified expenses incurred for the benefit of affected persons, subject to the policy's terms.

18. The Umbrella Policy also defines "personal and advertising injury" to include injury arising out of, among other things, oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services.

19. The Package Policy includes, among other things, auto dealer liability and errors-and-omissions coverage parts that provide defense and indemnity for "damages" resulting from certain negligent acts, errors, or omissions in the advertising, financing, and sale of motor vehicles, including alleged violations of specified consumer-protection statutes, and Zurich agreed to defend "suits" seeking such damages, subject to applicable definitions and exclusions.

20. The Zurich Policies further include specialized endorsements captioned "Customer Complaint Defense Coverage," "Business Crisis Expense," and related forms addressing consumer complaints and business-crisis situations. These endorsements confirm that the Zurich Policies were intended to respond to customer-complaint, consumer-protection, and business-crisis exposures of auto dealer insureds, such as those alleged in the Underlying Action, even though Zurich has taken the position that certain of these endorsements do not themselves impose a defense obligation for attorney general actions.

21. Lindsay paid all premiums due and fully performed its obligations under the Zurich Policies.

### B. Underlying Enforcement Action

22. On or about December 27, 2024, the Federal Trade Commission ("FTC") and the Office of the Maryland Attorney General, Consumer Protection Division, filed the Underlying Action against Lindsay Chevrolet, Lindsay Ford, and Lindsay Motors in the United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:24-cv-02362 (the "Underlying Action").

23. The operative Second Amended Complaint ("SAC") in the Underlying Action was filed on or about July 31, 2025. The SAC alleges that the Lindsay dealerships, along with certain individuals, engaged in "unfair" and "deceptive" trade practices in the advertising and sale of motor vehicles to consumers.

24. Among other things, the SAC alleges that the Lindsay dealerships misrepresented price, down payment, and financing terms; charged consumers for add-on products without clear consent; and otherwise misled consumers through their advertising and sales practices.

25. The SAC pleads causes of action under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and under Maryland's Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 et seq., among other statutes.

26. The SAC alleges, on its face, that the conduct at issue was "unfair" as well as "deceptive" and does not limit its claims to deliberate fraud. Portions of the SAC describe conduct that could be negligent, unintentional, or based on miscommunication or oversight, rather than knowing and intentional wrongdoing.

27. The Underlying Action seeks, among other relief, (a) injunctive relief; (b) restitution or consumer redress, including restoration to consumers of monies allegedly paid due to the challenged practices; (c) disgorgement of amounts characterized as "ill-gotten gains"; (d) civil penalties under applicable statutes; and (e) "all other monetary and equitable relief," including "other economic damages" incurred by affected consumers.

28. The monetary relief sought in the Underlying Action therefore includes remedies that are, in substance, intended to compensate consumers for economic losses allegedly caused by the challenged practices, even if labeled "restitution," "disgorgement," or "consumer redress," as well as civil penalty components that are more punitive in nature.

29. Defending the Underlying Action requires extensive investigation, discovery, motion practice, and trial preparation, resulting in substantial defense costs.

30. The Underlying Action has also generated significant adverse media coverage and reputational harm to Lindsay, creating the type of "business crisis" the Umbrella Policy's Coverage C was designed to address.

31. In response to that crisis, Lindsay has retained professionals and incurred costs for public relations, communications, and related crisis-management activities that qualify as "casualty business crisis expense" under the Umbrella Policy.

**C. Zurich's Coverage Positions**

32. Promptly after receiving notice of the Underlying Action, Lindsay tendered the lawsuit to Zurich and requested that Zurich defend Lindsay and its insured dealerships and provide coverage under the Zurich Policies.

33. By coverage letters dated June 3, 2025, July 22, 2025, and September 29, 2025, Zurich denied or purported to deny coverage for the Underlying Action and refused to assume Lindsay's defense (the "Initial Denial Letters"). True copies of the Initial Denial Letters are attached hereto as Exhibit A.

34. On June 24, 2025, Lindsay's Chief Operating Officer, John E. Smallwood ("Mr. Smallwood"), wrote directly to Zurich's claims handler, contesting Zurich's denial of coverage and expressly invoking both the Casualty Business Crisis coverage and Personal and Advertising Injury coverage under the Umbrella Policy (the "June 24, 2025 Letter"). A true copy of the June 24, 2025, Letter is attached hereto as Exhibit B.

35. In the June 24, 2025, Letter, Mr. Smallwood, acting as Lindsay's "principal" within the meaning of the Umbrella Policy, expressly stated that the FTC enforcement action and resulting media coverage constituted a "casualty business crisis" and quoted the policy's definition of that term. The letter explained that Lindsay, in good faith, viewed the Underlying Action as an event associated with

potential damages under Coverage A and Coverage B and accompanied by significant adverse media coverage.

36. The June 24, 2025 Letter identified specific adverse regional and national media coverage arising from the Underlying Action, including coverage in The Washington Post, WTOP News, the National Independent Automobile Dealers Association, and WUSA9, and stated that this adverse publicity had caused significant damage to Lindsay's business and reputation.

37. The June 24, 2025 Letter further advised Zurich that, as a result of this adverse media coverage, Lindsay had retained a crisis management firm and begun incurring fees and expenses to address the business crisis created by the Underlying Action and its fallout, and requested that Zurich acknowledge Coverage C and indemnify Lindsay for those crisis-management fees up to the $250,000 aggregate limit.

38. The June 24, 2025 Letter also expressly invoked Personal and Advertising Injury coverage under the Umbrella Policy and asserted that Lindsay had been the target of written publications that disparaged Lindsay's organization, goods, products, and services, thereby triggering potential coverage for "personal and advertising injury" and Zurich's obligation to defend and indemnify up to the policy's aggregate limit for that coverage.

39. By letter dated October 13, 2025, Lindsay, by counsel, again disputed Zurich's coverage position, requested that Zurich withdraw its denial and assume the defense, and explained why the allegations in the Underlying Action potentially fall within coverage, including under the Package Policy's consumer-protection and errors-and-omissions coverage and the Umbrella Policy. A true copy of the October 13, 2025, letter is attached hereto as Exhibit C.

40. Among other things, the October 13, 2025, letter emphasized that the Underlying Action pleads "unfair" practices that do not require intentional deception, that the complaint alleges conduct that could stem from miscommunications or oversight, and that under the "potentiality" duty-to-defend rules, Zurich must defend whenever there is any potential for coverage.

41. By letter dated October 30, 2025, Zurich's coverage counsel responded and reaffirmed Zurich's denial of coverage, stating that Customer Complaint Defense Coverage and Business Crisis Expense Coverage "do not apply" to the Underlying Action and that they are "not defense coverages." Zurich declined to assume the defense or agree to reimburse defense costs. A true copy of the October 30, 2025 letter is attached hereto as Exhibit D.

42. By letter dated November 13, 2025, Zurich's coverage counsel again reaffirmed Zurich's denial of coverage, expressly rejecting Lindsay's request to arbitrate the Casualty Business Crisis Expense issue and stating that Lindsay "is not entitled to that coverage because it does not apply," and that Zurich reaffirms its

denial of coverage for the Underlying Action. A true copy of the November 13, 2025 letter is attached hereto as Exhibit E.

43. Zurich has thus consistently refused to provide a defense to Lindsay in the Underlying Action under any of the Zurich Policies and has refused to pay or commit to pay casualty business crisis expenses arising from the same event and crisis, despite Lindsay's June 24, 2025 notice from its principal and its later coverage correspondence through counsel.

44. As a result of Zurich's refusal, Lindsay has been forced to defend the Underlying Action at its own expense and to fund its own business crisis response, despite having paid premiums for coverage that it reasonably expected would respond to precisely this kind of regulatory and customer-complaint crisis.

45. An actual, present, and substantial controversy therefore exists between Lindsay and Zurich regarding Zurich's obligations under the Zurich Policies, including but not limited to Zurich's duty to defend, to reimburse defense costs, and to pay covered casualty business crisis expenses.

**Count I – Declaratory Judgment (Duty to Defend)**

46. The allegations in paragraphs 1 through 45 are incorporated herein by reference.

47. The Zurich Policies constitute valid and enforceable contracts of insurance between Lindsay and Zurich.

48. Under applicable law, an insurer's duty to defend is broader than its duty to indemnify and is determined by comparing the allegations of the complaint to the policy's coverage grants and exclusions. If the allegations even potentially fall within the policy's coverage, the insurer must defend the entire suit.

49. The allegations in the SAC in the Underlying Action include, at a minimum, claims and factual scenarios that, if proven, could give rise to "damages" because of "personal and advertising injury" or other covered harms as defined and used in the Zurich Policies, including under the Package Policy's auto dealer and errors-and-omissions coverage parts and the Umbrella Policy.

50. The monetary relief sought in the Underlying Action, including but not limited to consumer redress, restitution, "other economic damages," and related monetary relief intended to compensate consumers for alleged economic losses, is, at a minimum, reasonably susceptible of being characterized as covered "damages" or "loss" under the Zurich Policies, or is ambiguous in that regard. Such ambiguity must be resolved in favor of the insured for purposes of the duty to defend.

51. The Underlying Action also presents potential exposure to consumer redress, restitution, and other monetary relief that, under a fair and reasonable interpretation of the Zurich Policies, constitute covered "damages" or are at least potentially covered "damages," even if certain components of the relief sought, such as civil penalties or purely punitive sums, may ultimately be determined to fall outside coverage.

52. In addition, the adverse media coverage and disparaging publications identified in the June 24, 2025 Letter further illustrate that Lindsay has been the target of written publications that disparage its organization, goods, products, and services, thereby implicating the Umbrella Policy's Personal and Advertising Injury definitions and reinforcing the potential for coverage.

53. Any exclusions or endorsements on which Zurich may rely are ambiguous and/or do not unambiguously eliminate all potential for coverage for the allegations in the Underlying Action or for the associated disparaging publications. At a minimum, there is doubt as to whether the exclusions apply to all of the claims and theories alleged and to all forms of monetary relief sought.

54. Under the "potentiality" rule, any such doubt must be resolved in favor of a duty to defend. Zurich is obligated to defend the entire Underlying Action so long as any claim or count, or any form of monetary relief sought therein, is even potentially covered under the Zurich Policies, whether on a primary basis under the Package Policy or on an excess or umbrella basis under the Umbrella Policy.

55. Zurich's refusal to defend Lindsay in the Underlying Action is contrary to the express terms of the Zurich Policies, the parties' reasonable expectations, and applicable law.

56. Accordingly, an actual controversy exists as to Zurich's duty to defend, and an immediate declaration of the parties' rights and obligations is necessary and appropriate under Va. Code § 8.01-184.

WHEREFORE, Lindsay respectfully requests that the Court enter judgment declaring that:

a. Zurich owes and has owed a duty to defend Lindsay and the insured entities in the Underlying Action from the time of tender;

b. Zurich must reimburse Lindsay for all past reasonable and necessary defense costs incurred in the Underlying Action, together with prejudgment interest; and

c. Zurich must pay all future reasonable and necessary defense costs in the Underlying Action, subject to the Zurich Policies' applicable limits and terms.

**<u>Count II – Declaratory Judgment (Casualty Business Crisis Expense)</u>**

57. The allegations in paragraphs 1 through 56 are incorporated herein by reference.

58. The Underlying Action and the events alleged therein, together with the substantial adverse media coverage and reputational harm that followed, constitute a "casualty business crisis" within the meaning of the Umbrella Policy.

59. In the June 24, 2025 Letter, Lindsay's Chief Operating Officer, acting as Lindsay's "principal" within the meaning of the Umbrella Policy, expressly and in good faith stated that the events giving rise to the Underlying Action, combined with the adverse media coverage, met the policy's definition of a "casualty business crisis" and quoted the Umbrella Policy's definition in support of that conclusion.

60. The June 24, 2025 Letter identified multiple news outlets, including The Washington Post, WTOP News, the National Independent Automobile Dealers Association, and WUSA9, as reporting on the Underlying Action and its allegations, and explained that this media coverage has caused significant damage to Lindsay's business and reputation.

61. In response to this crisis and adverse publicity, Lindsay retained a crisis management firm and began incurring fees and expenses to address the business crisis created by the Underlying Action and its fallout. These expenditures constitute "casualty business crisis expense" as defined by Coverage C, including fees and expenses of a crisis advisor and related communications efforts, among other covered items.

62. Under Coverage C of the Umbrella Policy, Zurich agreed to pay casualty business crisis expense from the first dollar, without any requirement that underlying insurance or a retained limit be exhausted, up to a separate aggregate limit.

63. Zurich has denied that Coverage C applies and has refused to pay or commit to pay the casualty business crisis expenses incurred by Lindsay in connection with the Underlying Action and related crisis, despite the notice and information provided in the June 24, 2025 Letter and subsequent correspondence.

64. An actual controversy exists regarding Zurich's obligation to pay casualty business crisis expenses under Coverage C. A declaration of the parties' rights and obligations is necessary and appropriate under Va. Code § 8.01-184.

WHEREFORE, Lindsay respectfully requests that the Court enter judgment declaring that:

a. The events giving rise to the Underlying Action, together with the resulting adverse media coverage, constitute a "casualty business crisis" within the meaning of the Umbrella Policy;

b. The casualty business crisis expenses incurred by Lindsay in responding to that crisis fall within the Umbrella Policy's definition of "casualty business crisis expense"; and

c. Zurich is obligated to pay such expenses up to the applicable aggregate limit, together with prejudgment interest.

**Count III – Declaratory Judgment and Indemnity**

65. The allegations in paragraphs 1 through 64 are incorporated herein by reference.

66. On or about February 13, 2026, the United States District Court for the Eastern District of Virginia entered a "Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief" in the Underlying Action (the "Final Order").

67. Among other things, the Final Order (a) permanently enjoins Lindsay from certain advertising and sales practices; (b) requires Lindsay to fund a claims and consumer-redress process to reimburse affected consumers for markups and add-on products; and (c) enters a Monetary Judgment in the amount of Three Million One Hundred Thousand Dollars ($3,100,000), jointly and severally against Lindsay and

the individual defendants, to be paid within a specified period to the Maryland Attorney General.

68. Under the Final Order, Lindsay is obligated to pay the Monetary Judgment, to fund the claims-administration and redress process, and to bear associated costs and expenses. Lindsay has begun incurring, and will continue to incur, substantial monetary obligations in satisfaction of the Final Order.

69. The Monetary Judgment and Lindsay's associated payment obligations under the Final Order constitute sums that Lindsay is "legally obligated to pay as damages" because of covered injury within the meaning of the Zurich Policies, including but not limited to "personal and advertising injury" and other covered harms alleged in the Underlying Action, or are at least reasonably susceptible to such characterization under a fair and reasonable interpretation of the Zurich Policies.

70. To the extent Zurich contends that the Monetary Judgment or consumer redress is "restitution," "disgorgement," "civil penalties," or otherwise non-covered or uninsurable, such characterization is, at minimum, disputed and ambiguous. The Final Order, on its face, requires payments designed to compensate consumers for alleged economic losses arising from the advertising and sale of motor vehicles and thus falls, at least potentially, within the Zurich Policies' grants of coverage.

71. The Zurich Policies contain a "Legal Action Against Us" condition stating, in substance, that no action may be brought against Zurich unless there has been full compliance with the policy terms and the insured's obligation to pay has been determined by judgment after trial or by Zurich's written agreement. By virtue

of the Final Order and entry of the Monetary Judgment, Lindsay's obligation to pay has now been fixed by judgment, and any such condition precedent is satisfied.

72. Notwithstanding the Final Order and the entry of the Monetary Judgment, Zurich has refused to acknowledge any obligation to indemnify Lindsay for the Monetary Judgment, the consumer-redress payments, or related costs and expenses, and has not agreed to reimburse Lindsay for any amounts paid or to be paid under the Final Order.

73. An actual, present, and substantial controversy therefore exists between Lindsay and Zurich as to Zurich's indemnity obligations under the Zurich Policies with respect to (a) the $3.1 million Monetary Judgment; (b) amounts paid or to be paid in consumer redress and claims administration under the Final Order; and (c) any related costs, interest, or expenses.

74. A declaration of the parties' rights and obligations with respect to Zurich's duty to indemnify Lindsay for the Monetary Judgment and other monetary obligations imposed by the Final Order is necessary and appropriate under Va. Code § 8.01-184 and related provisions of the Virginia Declaratory Judgment Act.

WHEREFORE, Lindsay respectfully requests that the Court enter judgment:

a. Declaring that the Monetary Judgment and other monetary obligations imposed on Lindsay by the Final Order constitute sums that are, at least in part, covered "damages" or "loss" under the Zurich Policies;

b. Declaring that Zurich is obligated to indemnify Lindsay for all amounts Lindsay has paid, or is obligated to pay, under the Final Order, including without limitation the $3,100,000 Monetary Judgment, consumer redress payments, claims-administration costs, and any associated interest, up to the applicable limits of the Zurich Policies;

c. Entering judgment in favor of Lindsay and against Zurich in the amount of all such covered sums that Lindsay has already paid under the Final Order, together with prejudgment and post-judgment interest; and

d. Granting such other and further relief as the Court deems just and proper.

**LINDSAY CHEVROLET, L.L.C.**
**LINDSAY FORD, LLC**
**LINDSAY MOTORS, LLC**
**LINDSAY MANAGEMENT COMPANY, LLC**
By Counsel

**CHARAPP & WEISS, LLP**
1818 Library Street, Suite 500
Reston, VA 20190
(571) 346-7505
Facsimile (703) 956-3009
Email bweiss@cwattorneys.com
edwyer@cwattorneys.com

By:______________________
Brad D. Weiss (VSB No. 22389)
Elizabeth A. Dwyer (VSB No. 87486)
Counsel for Lindsay

# EXHIBIT A

ZURICH

Latent & Environmental Claims | Mass Litigation
1299 Zurich Way
Schaumburg, IL 60196

June 3, 2025

Via Email: burt.brenner@lindsaycars.com

Burt Brenner
Lindsay Motor Car Company
1725 Kenwood Avenue
Alexandria, VA 22302

| | | |
|---|---|---|
| Re: | Insured: | Lindsay Motor Car Company d/b/a Lindsay Automotive Group |
| | Claim No.: | 4720186925 |
| | Lawsuit: | *Federal Trade Commission and Office of The Maryland Attorney General, Consumer Protection Division v. Lindsay Chevrolet, LLC, et al.* |
| | Jurisdiction: | U.S. District Court for the Eastern District of Virginia Alexandria Division |
| | Case No.: | 1:24-cv-02362 |

Dear Mr. Brenner:

This letter supplements prior communications from Zurich American Insurance Company and American Guarantee and Liability Insurance Company, hereinafter collectively referred to as "Zurich", to Lindsay Motor Car Company ("Lindsay Motor") and provides you with Zurich's coverage determination with respect to the above-referenced matter.

Zurich has considered the tender of defense and request for indemnity made by Lindsay Motor with respect to the above lawsuit under the terms of the policies. For the reasons set forth below, there is no coverage for this lawsuit under policies ADM 5676243 00 through ADM 5676243 04 and AUC 5594956 00 through AUC 5594956 04. Accordingly, we will neither defend nor indemnify Lindsay Motor.

**Summary of Factual Allegations**

On or about March 26, 2025, we were tendered the complaint styled Federal Trade Commission ("FTC") and Office of The Maryland Attorney General, Consumer Protection Division ("Division") v. Lindsay Chevrolet, et al., which was filed on or about December 30, 2024, in the United States District Court of Virginia – Alexandria Division ("Complaint"). The Complaint names Lindsay Chevrolet, L.L.C. a limited liability company, Lindsay Ford, LLC, a limited liability company, Lindsay Motors, LLC, a limited liability company, Lindsay Management Company, LLC, a limited liability company, Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual, as Defendants ("Defendants").

The FTC brings this action for Defendants' alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Defendants' violations related to deceptive and unfair practices in the advertising, marketing, promotion, offering for sale, lease or financing, and sale, lease, or financing of motor vehicles. For these

violations, the FTC seeks relief, including a permanent injunction and other relief, pursuant to Section 13(b) of the FTC Act 15 U.S.C. § 53(b).

The Division brings this action under Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law §§ 13-101 through 13-501 (LexisNexis Supp. 2023), to enjoin Defendants from engaging in unfair or deceptive trade practices in the course of offering and selling vehicles to consumers in the State of Maryland, and to obtain relief for those consumers victimized by Defendants' allegedly unlawful practices.

The individual defendants are alleged to be aware of the ongoing, unlawful practices. The Virginia Motor Vehicle Dealer Board ("MVDB") has allegedly cited the Lindsay dealerships for these unlawful practices at least four separate times, going back over a decade. In 2013, following multiple complaints, the MVDB allegedly warned Lindsay Chevrolet that its practice of advertising prices that include rebates, incentives, or dealer discounts unavailable to all consumers violates Virginia Law. The Defendants' alleged unlawful advertising practices have continued after warnings, citations, and fines.

The Complaint alleges Misrepresentations Regarding Advertised Prices; Misrepresentations Regarding Financing; Misrepresentations Regarding Add-On Charges; Misrepresentations Regarding Charges; Unfair Practices Relating to Add-On Charges; Deceptive Practices; and Unfair Trade Practices.

The Complaint alleges that consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the CPA. The Plaintiffs request that the Court enter a permanent injunction to prevent future violations; award such relief as the Court finds necessary to redress injury to consumers; require Defendants to pay the costs of this action; require Defendants to pay a civil penalty; hold that all Defendants are jointly and severally liable for restitution, penalties, costs, and any other sanctions or required payments; and award any additional relief as the Court determines to be just and proper.

**Policy Information**

Please consult your policies for reference regarding the following coverage discussion. Please refer to the policies for complete terms and provisions.

We have confirmed that Zurich American Insurance Company issued the following policies to Lindsay Motor which contain a Commercial General Liability coverage part and an Auto Dealers Coverage part:

| Policy No. | Policy Term | Named Insured: |
| --- | --- | --- |
| ADM 5676243 00 | 7/1/2020 – 7/1/2021 | Lindsay Motor Car Company dba Lindsay Automotive Group |
| ADM 5676243 01 | 7/1/2021 – 7/1/2022 | Lindsay Motor Car Company dba Lindsay Automotive Group |
| ADM 5676243 02 | 7/1/2022 – 7/1/2023 | Lindsay Automotive Group; Lindsay Chevrolet, LLC; Lindsay Ford, LLC; Lindsay Management Company, LLC |

| | | |
|---|---|---|
| ADM 5676243 03 | 7/1/2023 – 7/1/2024 | Lindsay Automotive Group; Lindsay Chevrolet, LLC; Lindsay Ford, LLC; Lindsay Management Company, LLC |
| ADM 5676243 04 | 7/1/2024 – 7/1/2025 | Lindsay Automotive Group; Lindsay Chevrolet, LLC; Lindsay Ford, LLC; Lindsay Management Company, LLC |

In order for you to understand the basis for this denial of coverage, we refer you to the Insuring Agreements of the Commercial General Liability Coverage Part, which are contained in the following coverage form: CG 00 01 04 13 and the to the Insuring Agreements of the Auto Dealers Coverage Part, which are contained in the following coverage forms: CA 00 25 10 13 and CA 00 25 11 20.

**Commercial General Liability Coverage Part**

The Commercial General Liability Coverage Part of the policies contains the following potentially applicable exclusions under Coverage A: a. Expected or Intended Injury.

Certain terms are defined in the Commercial General Liability Coverage Part of the policies: 1. Advertisement; 3. Bodily injury; 13. Occurrence; 14. Personal and Advertising Injury; 17. Property damage; and 21. Your product.

The policies contain the Exclusion – Personal and Advertising Injury Endorsement which changes the Commercial General Liability Coverage Part.

**Auto Dealers Coverage Part**

Section II – General Liability of the Auto Dealers Coverage Part contains the following potentially applicable exclusions under Coverage A: a. Expected or Intended Injury and n. Personal and Advertising Injury

Section II – General Liability of the Auto Dealers Coverage Part contains the following potentially applicable exclusions under Coverage B: b. Material Published with Knowledge of Falsity; c. Material Published Prior to Policy Period; g. Quality or Performance of Goods – Failure to Conform to Statements; h. Wrong Description of Prices; q. Acts, Errors or Omissions.

Section III – Acts, Errors, Or Omissions of the Auto Dealers Coverage Part contains the following potentially applicable exclusions: 1. Criminal, Fraudulent, Malicious, Dishonest or Intentional Acts; 2. Bodily Injury, Property Damage or Personal and Advertising Injury; 5. Noncompensatory Damages; 6. Quality or Performance of Goods – Failure to Conform to Statements.

Certain terms are defined in the Auto Dealers Coverage Part of the policies: B. Act, error, or omission; C. Advertisement; E. Auto dealer operations; F. Bodily injury; R. Personal and advertising injury; and U. Property damage.

The policies contain the Customer Complaint Defense Endorsement – Virginia; the Designated Statute Defense – Virginia; Unicover Auto Dealers Coverage Form Endorsement – Virginia; and the Acts, Errors or Omissions Coverage – Virginia Endorsement.

The Customer Complaint Defense Endorsement contains the following exclusion: 1. Criminal, Fraudulent, Malicious, Dishonest or Intentional Acts.

The Designated Statute Defense Endorsement contains the following exclusions: a. All exclusions in Section II – General Liability Coverage except Paragraph A.2.o Recording and Distribution of Material or Information in Violation of Law and 2. This endorsement does not apply to any claim or "suit" for which we provide defense or indemnification under any other policy or coverage form provided by us or would have provided coverage except for the exhaustion of limits.

**Coverage Analysis**

**Commercial General Liability Coverage Part**

Coverage A of the policies applies to those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined by the policies. In this matter, the Plaintiffs seek: a permanent injunction to prevent further violations; an award of such relief as the Court finds necessary to redress injury to consumers; a requirement that Defendants pay the costs of this action; a requirement that Defendants pay a civil penalty; restitution, penalties, costs, and any other sanctions or required payments arising from ore relating to this action; and an award of any additional relief as the Court determines to be just and proper. The relief sought by Plaintiffs does not constitute damages because of "bodily injury" or "property damage", which are caused by an "occurrence", as those terms are defined in the policies. As a result, the Insuring Agreement for Coverage A of the policies has not been met, and Zurich must respectfully deny coverage in this matter.

Zurich reserves the right to deny coverage under Coverage A of the policies based on the Expected or Intended Injury exclusion.

The policies contain the Exclusion – Personal and Advertising Injury Endorsement which modifies the insurance provided under the Commercial General Liability Coverage Part. The Endorsement states: "Coverage B (Section I) does not apply and none of the references to it in the Coverage Part apply. Therefore, there is no coverage for the claimed injury under Coverage B – Personal and Advertising Injury Liability."

In addition, Zurich reserves the right to deny coverage under the above-referenced policies if it is determined that Lindsay Chevrolet, L.L.C.; Lindsay Ford, LLC; Lindsay Motors, LLC; Lindsay Management Company, LLC; Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual are not insureds under the policies.

**Auto Dealers Coverage Part**

**SECTION II – GENERAL LIABILTY COVERAGE**

Under Section II – General Liability Coverages Part A of the policies states, "we will pay all sums an 'insured' legally must pay as damages because of "bodily injury" or "property damage" to which this

insurance applies, caused by an "accident" and resulting from your 'auto dealer operations'". Since the Complaint does not allege "bodily injury" or "property damage" that was caused by an "accident" resulting from your "auto dealer operations", there is no insurance coverage for this lawsuit under policies ADM 5676243 00 through ADM 5676243 04.

Zurich reserves the right to deny coverage under Section II - Coverage A of the policies based on the Expected or Intended Injury exclusion and the Personal and Advertising exclusion.

Under Section II – General Liability Coverages Part B of the policies states, "we will pay all sums the 'insured' legally must pay as damages because of 'personal and advertising injury' to which this insurance applies, caused by an offense arising out of your 'auto dealer operations', but only if the offense was committed in the coverage territory during the policy period. Since the Complaint does not allege "personal and advertising injury" that was caused by your "auto dealer operations", there is no insurance coverage for this lawsuit under policies ADM 5676243 00 through ADM 5676243 04.

Zurich reserves the right to deny coverage under Section II Coverage B of the policies based on the Material Published with Knowledge of Falsity exclusion; the Material Published Prior to Policy Period exclusion; the Quality or Performance of Goods – Failure to Conform to Statements exclusion; the Wrong Description of Prices exclusion; and the Acts, Errors or Omissions exclusion.

In addition, Zurich reserves the right to deny coverage under the above-referenced policies if it is determined that Lindsay Chevrolet, L.L.C.; Lindsay Ford, LLC; Lindsay Motors, LLC; Lindsay Management Company, LLC; Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual are not insureds under the policies.

**SECTION III – ACTS, ERRORS, OR OMISSIONS LIABILTY COVERAGES**

The Acts, Errors or Omissions Coverage – Virginia Endorsement modifies insurance provided under the Auto Dealers Coverage Form. Paragraph A. Coverage is replaced by the following, in relevant part:

A. Coverage

1. We will pay sums that an "insured" legally must pay as "damages" because of any Truth in Lending/Truth in Leasing Errors And Omissions, Statute and Title Errors And Omissions, Or Agents Errors And Omissions when a limit for such insurance coverage is shown in the Declarations.

   a. Under the Truth in Lending/Truth in Leasing Errors And Omissions Coverage, we will pay for "damages" resulting from any claim or "suit" filed against you by or on behalf of a customer arising out of an alleged violation of a state or federal truth in lending in leasing statute requiring that the precise and meaningful cost of credit information be provided to a credit customer. The violation must be alleged to have occurred within the coverage territory and during the policy period.

   ***

   b. Under Statute and Title Errors And Omissions Coverage, we will pay for "damages" resulting from any claim or "suit" filed against you or on behalf of:

(1) A customer arising out of your "auto dealer operations", because of an alleged violation of any federal, state or local:
   (a) Odometer statute;
   (b) New or used auto damage or prior use disclosure statute;
   (c) Competitive auto parts statute;
   (d) Used car Buyers Guide, including Federal Regulation 455;
   (e) Statute requiring the display of automobile window stickers listing the manufacturer's suggested retail price for the vehicle and any of its accessories, including the Monroney Act.

***

The alleged violation must take place within the coverage territory during the coverage period.

The Endorsement replaces Subparagraph 5. Noncompensatory Damage of B. Exclusions with the following:

5. Noncompensatory damages

Criminal fines or penalties imposed by law or regulation, or demands for injunctive or equitable relief."

"Damages" means amounts awardable by court of law (including punitive damages where insurable by law). However, "damages" does not mean:

a. Civil penalties, fines, or assessments; or
b. Other statutory awards in excess of compensation, except where insurable by law.

The "suit" does not arise out of an alleged violation of state or federal truth in lending or truth in leasing statute. Therefore, the Truth in Lending/Truth in Leasing Errors And Omissions Coverage would not apply. Similarly, the Statute and Title Errors And Omissions Coverage does not apply because there is not an alleged violation of any federal, state or local odometer statute, new or used damage or prior use disclosure statute, used car Buyer's guide, or statute requiring the display of automobile window stickers listing the manufacturer's suggested retail price of the vehicle and any of its accessories.

Zurich reserves the right to deny coverage under Section III – Acts, Errors, or Omissions Liability Coverage Part of the policies based on the Criminal, Fraudulent, Malicious, Dishonest or Intentional Acts exclusion; the Bodily Injury, Property Damage or Personal and Advertising Injury exclusion; The Noncompensatory Damages exclusion; and the Quality or Performance of Goods – Failure to Conform to Statements exclusion.

In addition, Zurich reserves the right to deny coverage under the above-referenced policies if it is determined that Lindsay Chevrolet, L.L.C.; Lindsay Ford, LLC; Lindsay Motors, LLC; Lindsay Management

Company, LLC; Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual are not insureds under the policies.

**Customer Complaint Defense Endorsement**

The Customer Complaint Defense Endorsement provides, in relevant part:

**A. Coverage**

1. We will reimburse you for your reasonable costs and expenses incurred in defending against a "suit" filed against you by or on behalf of a customer arising out of:
   a. Your sale, lease, rental, service, or repair of your "products" or "work you performed" as part of your "auto dealer operations";
   b. The promotion of your "products" or "work you performed" as part of your "auto dealer operations".
2. This coverage applies only if the acts or omissions giving rise to the "suit" take place in the coverage territory during the policy period and the "suit" is brought within the coverage territory.

***

**E. Definitions**

1. The following definition is added:
   "Damages" means amounts awardable by a court of law (including punitive damages where insurable by law). However, "Damages" does not mean:
   a. Civil penalties, fines, or assessments;
   b. Other statutory awards in excess of compensation, except where insurable by law;
   c. Equitable remedies.
2. Paragraph V. is replaced by the following:
   V. "Suit" means a civil action for "damages", including arbitration to which the "insured" must submit or submits with our consent. "Suit" alternatively includes any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent. A class action is one "suit". "Suit" does not mean an attorney general action.

As discussed above, the FTC and the Division allege the Defendants violated the FTC Act and the Maryland CPA. Specifically, the FTC brings this action for Defendants' violation related to deceptive practices in advertising, marketing, promotion, offering for sale, lease or financing, and sale, lease or financing of motor vehicles. The Division brings this action to enjoin Defendants from engaging in unfair and deceptive trade practices in the course of offering and selling vehicles to consumers in the State of Maryland, and to obtain relief for those consumers victimized by Defendants' unlawful practices.

The Maryland Attorney General has filed a Complaint on behalf of consumers in its state, which would be a lawsuit brought on behalf of consumers. However, the definition of "suit" within the coverage part specifically excludes from its definition an attorney general action. Therefore, while this Complaint is being brought on behalf of customers, because it is being brought on their behalf by the Maryland Attorney General, it does not qualify as a "suit" and thus, there is no coverage for this Complaint under the Customer Complaint Defense Endorsement. Zurich denies any obligation to defend or indemnify Lindsay Motor.

Additionally, the Customer Complaint Defense Coverage part excludes from its definition civil penalties, fines or assessments, other statutory awards in excess of compensation (except where insurable by law), and equitable remedies. Accordingly, to the extent the FTC is also bringing suit against the insured, it does not qualify as a "suit" due to the types of relief sought not satisfying the definition of "damages" within the meaning of the endorsement. Therefore, we deny any obligation to defend or indemnify Lindsay Motor.

Zurich reserves the right to deny coverage based on the Criminal, Fraudulent, Malicious, Dishonest or Intentional Acts exclusion.

In addition, Zurich reserves the right to deny coverage under the above-referenced policies if it is determined that Lindsay Chevrolet, L.L.C.; Lindsay Ford, LLC; Lindsay Motors, LLC; Lindsay Management Company, LLC; Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual are not insureds under the policies.

**Designated Statute Defense – Virginia Endorsement**

The Designated Statute Defense – Virginia provides, in relevant part:

**A. Designated Statute Defense**

We will reimburse you for the reasonable costs and expenses you incur in defending yourself in a "suit" brought within the coverage territory, during the policy period arising out of the alleged violation of any of the following statutes, acts or laws, including any amendments or revisions thereto:

1. Statutes governed, enforced, or regulated by the Office of Foreign Assets Control;
2. Statutes Controlling the Assault of Non-Solicited Pornography and Marketing Act;
3. The Telephone Consumer Protection Act;
4. The Gramm Leach Bliley Act;
5. Fair Credit Reporting Act;
6. Equal Credit Opportunity Act;
7. Federal Patent Infringement Law;
8. Drivers Privacy Protection Act;
9. Dodd-Frank Wall Street Reform and Consumer Protection Act;
10. Any other federal, state, or local statute, act or law, involving the same alleged violations that are addressed by the statutes, acts or laws listed above.

***

**D. Definitions**

For purposes of the coverage provided by this endorsement, Section V – Definitions is amended as follows:

1. The following definition is added:

   "Damages" means amounts awardable by a court of law (including punitive damages where insurable by law). However, "damages" does not mean:

   a. Civil penalties, fines or assessments;
   b. Other statutory awards in excess of compensation, except where insurable by law;
   c. Equitable remedies.

2. Paragraph V. is replaced by the following:
   V. "Suit" means a civil action for "damages", including arbitration or mediation to which the "insured" must submit or submits with our consent. "Suit" alternatively includes any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent. A class action is one "suit". "Suit" does not mean an attorney general action.

As discussed above, the FTC and the Division alleged the Defendants violated the FTC Act and the Maryland CPA. Specifically, the FTC brings this action for Defendants' violations related to deceptive practices in advertising, marketing, promotion, offering for sale, lease or financing, and sale, lease or financing of motor vehicles. The Division brings this action to enjoin Defendants from engaging in unfair and deceptive trade practices in the course of offering and selling vehicles to consumers in the State of Maryland, and to obtain relief for those consumers victimized by Defendants' unlawful practices.

Because the Complaint does not allege the violation of any of the statutes, acts or laws specified in the Designated Statute Defense Endorsement, there is no coverage for this Complaint under the Designated Statute Defense Endorsement. Zurich denies any obligation to defend or indemnify Lindsay Motor.

The Maryland Attorney General has filed a Complaint on behalf of consumers in its state. However, the definition of "suit" within the coverage part specifically excludes from its definition an attorney general action. Therefore, because this Complaint is being brought by the Maryland Attorney General, it does not qualify as a "suit" and thus, there is no coverage for this Complaint under the Designated Statute Defense Endorsement. Zurich denies any obligation to defend or indemnify Lindsay Motor.

Additionally, the Designated Statute Defense Coverage Part excludes from its definition civil penalties, fines or assessments, other statutory awards in excess of compensation (except where insurable by law), and equitable remedies. Accordingly, to the extent the FTC is also bringing suit against the insured, it does not qualify as a "suit" due to the types of relief sought not satisfying the definition of "damages" within the meaning of the endorsement. Therefore, we deny any obligation to defend or indemnify Lindsay Motor.

Zurich reserves the right to deny coverage based on the exclusions listed above.

In addition, Zurich reserves the right to deny coverage under the above-referenced policies if it is determined that Lindsay Chevrolet, L.L.C.; Lindsay Ford, LLC; Lindsay Motors, LLC; Lindsay Management Company, LLC; Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual are not insureds under the policies.

**Commercial Umbrella Liability Policies**

Please consult your policies for reference regarding the following coverage discussion. Please refer to the policies for complete terms and provisions.

We have confirmed that American Guarantee and Liability Insurance Company issued the following policies to Lindsay Motor:

| Policy No. | Policy Term |
|---|---|
| AUC 5594956 00 | 7/1/2020 – 7/1/2021 |
| AUC 5594956 01 | 7/1/2021 – 7/1/2022 |
| AUC 5594956 02 | 7/1/2022 – 7/1/2023 |
| AUC 5594956 03 | 7/1/2023 – 7/1/2024 |
| AUC 5594956 04 | 7/1/2024 – 7/1/2025 |

In order for you to understand the basis for this declination of coverage, we refer you to the Insuring Agreements of the policies, which are contained in the following coverage form: U-UMB-103-CCW (03/10).

The Zurich policies contain the following potentially applicable exclusions under Coverage B Section IV. Exclusions 4. Intentional Injury; 5. Personal and Advertising Injury.

Certain terms are defined under Coverage A and Coverage B in the Zurich policies: "Loss". The following definitions are applicable to Coverage A only: "Occurrence". The following definitions are applicable to Coverage B only: "advertisement"; "occurrence"; "personal and advertising injury"; "property damage" and "your product".

The policies contain the following endorsements: Amended Definition of Personal and Advertising Injury – Coverage B; Umbrella Liability Policy – Virginia Amendatory; and Umbrella Amendatory Endorsement.

**Coverage Analysis**

Coverage A – Excess Follow Form Liability Insurance applies to those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, this policy includes:

1. The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2; and
2. The terms and conditions that apply to Coverage A of this policy.

Notwithstanding anything to the contrary contained in this paragraph, if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then Coverage A does not apply to such damages.

As stated above, there is no insurance coverage for the claimed injury or damage under the Liability Policies. Therefore, there is no coverage under Coverage A of the Commercial Umbrella Liability policies for the claimed injury or damage.

Coverage B – Umbrella Liability Insurance of the policies provides that we will pay on behalf of the insured those damages the insured becomes legally obligated to pay by reason of liability:

1. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
2. Assumed under an insured contract because of bodily injury or property damage;

Covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere.

Coverage B does not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the Limits of Insurance of underlying insurance.

Since the lawsuit does not allege any bodily injury, property damage, or personal and advertising injury as defined by the policies, there is no coverage for this matter under Coverage B – Umbrella Liability Insurance.

Zurich reserves the right to deny coverage under Coverage B Section IV. Exclusions 4. Intentional Injury and 5. Personal and Advertising Injury.

In addition, Zurich reserves the right to deny coverage under the above-referenced policies if it is determined that Lindsay Chevrolet, L.L.C.; Lindsay Ford, LLC; Lindsay Motors, LLC; Lindsay Management Company, LLC; Michael Lindsay, an individual, John Smallwood, an individual, and Paul Smyth an individual are not insureds under the policies.

**Conclusion**

In conclusion, based upon the information available at this time and for the reasons set forth above, Zurich must respectfully deny any duty to defend and/or indemnify Lindsay Motor under policies ADM 5676243 00 through ADM 5676243 04 and AUC 5594956 00 through AUC 5594956 04.

By limiting its policy references to those cited above, Zurich does not waive its rights under any other policy provisions that may apply. The insurance policies in their entirety are incorporated herein by reference, as if stated in full. If we learn or are advised of other facts with respect to this claim, Zurich reserves the right to raise additional grounds for a coverage declination that may apply.

If you disagree with this coverage determination or have additional information or documentation that you believe may alter our coverage position, please forward that information to my attention for further review.

If you have any questions regarding the contents of this letter, please call me directly to discuss further.

Sincerely,
ZURICH AMERICAN INSURANCE COMPANY
AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY

Bethany Lutgen

Claims Specialist
Latent & Environmental Claims | Mass Litigation
Phone: (847) 605-6129
Email: beth.lutgen@zurichna.com

cc: Anne Giambelluca (anne.giambelluca@alliant.com)
John Smallwood (john.smallwood@lindsaycars.com)

ZURICH

Latent & Environmental Claims | Mass Litigation
1299 Zurich Way
Schaumburg, IL 60196

July 22, 2025

Via Email: Bweiss@cwattorneys.com

Lindsay Motor Car Company d/b/a Lindsay Automotive Group
c/o Brad Weiss
Charapp & Weiss
1818 Library Street, Suite 500
Reston, VA 20190

| | | |
|---|---|---|
| Re: | Insured: | Lindsay Motor Car Company d/b/a Lindsay Automotive Group |
| | Claim No.: | 4720186925 |
| | Lawsuit: | *Federal Trade Commission and Office of The Maryland Attorney General, Consumer Protection Division v. Lindsay Chevrolet, LLC, et al.* |
| | Jurisdiction: | U.S. District Court for the Eastern District of Virginia Alexandria Division |
| | Case No.: | 1:24-cv-02362 |

Dear Mr. Weiss:

On June 3, 2025 and June 30, 2025, Zurich American Insurance Company and American Guarantee and Liability Insurance Company, hereinafter collectively referred to as "Zurich", issued coverage correspondence to Lindsay Motor Car Company ("Lindsay Motor"), denying coverage in the above-referenced matter under certain general liability, auto dealers and umbrella liability insurance policies. In a letter dated July 16, 2025, you submitted, on behalf of Lindsay Motor, a claim for reimbursement of fees incurred by Lindsay Motor concerning casualty/business crisis fees and personal and advertising injury fees. Please allow this letter to supplement Zurich's June 3, 2025 and June 30, 2025 disclaimers of coverage, and to serve as a response to your letter dated July 16, 2025.

In your July 16, 2025 letter, you assert Zurich has an obligation to indemnify Lindsay Motor for fees it has incurred with respect to addressing the business crisis related to the plaintiffs' claims. In addition, you assert the "Personal and Advertising Injury" coverage part of the policies provides a defense and indemnification obligation. Zurich has considered the request outlined in your letter and for the reasons set for below, Zurich reaffirms its denial of coverage for this lawsuit under policies ADM 5676243 00 through ADM 5676243 04 and AUC 5594956 00 through AUC 5594956 04. Accordingly, we will neither defend nor indemnify Lindsay Motor. In addition, because we will neither defend nor indemnify Lindsay Motor, we will not be executing the insured's proposed common interest agreement.

The ADM policies define "personal and advertising injury" to mean injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

Confidential \ Non Personal Data

b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or remises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a persons' or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

While there are allegations related to Lindsay Motor's advertisement of its products, that alone does not qualify as "personal and advertising injury" as defined in the ADM policies. As a result, the Insuring Agreement for Coverage B of policies ADM 5676243 00 through ADM 5676243 04has not been met, and Zurich must respectfully deny coverage for this lawsuit under the policies.

With respect to the Commercial Umbrella Liability Policies, Zurich denied coverage under our underlying policies; therefore, there is no coverage available under these policies for Coverage A – Excess Follow Form Liability Insurance. With respect to Coverage B – Umbrella Liability Insurance, there would be no coverage because the insuring agreement has not been met. "Personal and advertising injury" under Coverage B of the Umbrella Liability Insurance is defined the same as in the underlying policies listed above and includes an additional offense: "h. Discrimination (unless insurance thereof is prohibited by law), not arising out of or related to employment practices". Since the lawsuit does not allege any "personal or advertising injury" as defined in the policies, there is no coverage for this matter under Coverage B – Umbrella Liability Insurance.

Coverage C – Casualty Business Crisis Expense of Commercial Umbrella Liability Policies AUC 5594956 00 through AUC 5594956 04 provides that we will pay for "casualty business crisis expense" regardless of fault arising from a "casualty business crisis" first commencing during the policy period. No "underlying insurance" or "Retained Limit" applies to Coverage C. Subject to the other terms and conditions of this coverage, we shall pay "casualty business crisis expense" from the first dollar of such expense.

The policies define "casualty business crisis" as an event that in the good faith opinion of your "principal", in the absence of "casualty business crisis services", has been or may be associated with:

a. Damages covered by this policy under Coverage A that are in excess of the applicable limits of "underlying insurance" or under Coverage B that are in excess of the "Retained Limit"; and

b. Significant adverse regional or national media coverage.

"Casualty business crisis" shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths or injuries, burns, dismemberment, traumatic brain injury, paraplegia, or contamination of food, drink or pharmaceuticals.

For purposes of Coverage C, a "casualty business crisis" will first commence when your "principal" first become aware of the "occurrence" and will conclude at the earliest of the time when the "casualty business crisis advisor" advises you that the crisis no longer exists or when the "Casualty Business Crisis Expense" Aggregate Limit has been exhausted.

There is no coverage available under Coverage C of the Umbrella Liability Policies because the definition of "casualty business crisis" means an event...that has been or may be associated with damages covered by this policy..." Because there are no damages covered under the Umbrella Liability Policies, there can be no "casualty business crisis" as defined in the polices. As a result, the Insuring Agreement has not been met, and Zurich must respectfully deny coverage under Coverage C – Casualty Business Crisis Expense of policies AUC 5594956 00 through AUC 5594956 04.

By limiting its policy references to those cited above, Zurich does not waive its rights under any other policy provisions that may apply. The insurance policies in their entirety are incorporated herein by reference, as if stated in full, as are Zurich's June 3, 2025 and June 30, 2025 coverage letters. If we learn or are advised of other facts with respect to this claim, Zurich reserves the right to raise additional grounds for a coverage declination that may apply.

If you disagree with this coverage determination or if you have additional information or documentation that you believe may alter our coverage position, please forward that information to my attention for further review.

If you have any questions regarding the contents of this letter, please call me directly to discuss further.

Sincerely,
ZURICH AMERICAN INSURANCE COMPANY
AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY

Bethany Lutgen
Claims Specialist
Latent & Environmental Claims | Mass Litigation
Phone: (847) 605-6129
Email: beth.lutgen@zurichna.com

cc: Burt Brenner (burt.brenner@lindsaycars.com)
John Smallwood (john.smallwood@lindsaycars.com)
Anne Giambelluca (anne.giambelluca@alliant.com)
Elizabeth Dwyer (edwyer@cwattorneys.com)

**James P. Steele**
**Partner**
**(202) 310-5521**
**james.steele@carrmaloney.com**
**Admitted in MD & DC**

September 29, 2025

***Via Email & Regular mail***

Brad D. Weiss, Esquire
Charapp & Weiss
1818 Library St Suite 500
Reston, Virginia 20190
bweiss@cwattorneys.com

Re: *Federal Trade Commission, et al. v. Lindsay Chevrolet, LLC, et al.*
U.S. District Court for the Eastern District of Virginia, Alexandria Division
Civil Action No. 1:24-cv-02362
Zurich Claim No. 4720186925
Policies: ADM 5676243 00 - ADM 5676240 04; AUC 5594956 00 – AUC 5594956 04
Insured: Lindsay Motor Car Company, d/b/a Lindsay Automotive Group

Dear Mr. Weiss:

I represent Zurich American Insurance Company and American Guarantee and Liability Insurance Company (collectively Zurich) regarding the coverage issue in the above-referenced matter. I write to respond to your letters dated July 16, August 12, August 14 and August 22, 2025, as well as a June 12, 2025, letter written by Anne Giambelluca of Alliant. In those letters, you and Ms. Giambelluca requested that Zurich reconsider its denial of a duty to defend and/or to indemnify Lindsay Motor Car Company, d/b/a Lindsay Automotive Group (Lindsay).

In analyzing this issue, I have reviewed the following:

1. June 3, 2025, Bethany Lutgen (Zurich) letter to Burt Brenner (Lindsay);
2. June 12, 2025, Anne Giambelluca letter to Bethany Lutgen;
3. June 30, 2025, Bethany Lutgen letter to Anne Giambelluca;
4. July 16, 2025, letter from you to Bethany Lutgen (with attached draft Common Interest Agreement);
5. July 22, 2025, letter from Bethany Lutgen to you;
6. August 12, 2025, letter from you to Bethany Lutgen;
7. August 14, 2025, letter from you to Bethany Lutgen;

8. August 22, 2025, letter from you to Bethany Lutgen;
9. Insurance policies ADM 5676243 00 - ADM 5676240 04; and
10. Insurance policies AUC 5594956 00 – AUC 5594956 04.

Although I read the policies more broadly, I also focused on every provision and exclusion in the policies that are referred to in the letters. Based on this review, Zurich has considered the request outlined in your letters and for the reasons set for below, Zurich reaffirms its denial of coverage for this lawsuit under the policies listed in 9 and 10 above. Accordingly, Zurich will neither defend nor indemnify Lindsay.

Ms. Lutgen's June 3, 2025, letter to Mr. Brenner contains an analysis of coverage issues under the Commercial General Liability Coverage Part and the Auto Dealers Coverage Part (SECTIONS II – GENERAL LIABILITY COVERAGE, AND III – ACTS, ERRORS, OR OMMISSIONS LAIBILITY COVERAGES), the Customer Complaint Defense Endorsement, Designated Statute Defense – Virginia Endorsement, and the Commercial Umbrella Liability Policies. Nothing in my review supports Zurich reconsidering its initial position denying a duty to defend and/or to indemnify. I refer you to the coverage analysis contained in the June 3, 2025, letter, which I incorporate here by reference.

Ms. Giambelluca's June 12, 2025, letter to Ms. Lutgen requests coverage under the Customer Complaint Defense Coverage – Virginia Endorsement. Ms. Lutgen responded to Ms. Giambelluca's argument in her June 30, 2025 letter. Broadly, "[w]ith respect to the claims brought by the Maryland Attorney General, this matter does not meet the definition of 'suit'. With respect to the claims brought by the FTC, there are no alleged 'damages'. As a result, there is no possibility of coverage for the ..." plaintiffs' claims. Nothing in my review supports Zurich reconsidering its initial position denying a duty to defend and/or to indemnify. I refer you to the coverage analysis contained in the June 12, 2025, letter, which I incorporate here by reference.

On July 16, 2025, you wrote Ms. Lutgen, arguing for reimbursement of fees you said Lindsay incurred concerning casualty/business crisis fees and personal and advertising injury under the policy. Ms. Lutgen responded on July 22, 2025. In her response, she explained that:

- Plaintiffs' claims do not fall within the Personal and Advertising Injury coverage under the ADM or Commercial Umbrella Liability policies;
- There is no coverage under the Commercial Umbrella Liability Policies because Zurich denied coverage under the underlying policies;
- There is no coverage under Coverage B – Umbrella Liability Insurance, because the insuring agreement has not been met;

- Coverage B – Umbrella Liability Insurance includes an additional offense: "h. Discrimination (unless insurance thereof is prohibited by law), not arising out of or related to employment practices"; and
- "There is no coverage available under Coverage C of the Umbrella Liability Policies because the definition of "casualty business crisis" means an event…that has been or may be associated with damages covered by this policy…"

Zurich therefore denied coverage under Coverage C – Casualty Business Crisis Expense of the AUC policies listed at 10., above, because there are no damages covered under the Umbrella Liability Policies.

Nothing in my review supports Zurich reconsidering its initial position denying a duty to defend and/or to indemnify. I refer you to the coverage analysis contained in the July 16, 2025, letter, which I incorporate here by reference.

Your August 12, 2025, letter contests Zurich's denial of coverage, citing the Customer Complaint Defense Coverage – Virginia Endorsement. In the letter, you refer to Section A, Coverage, paragraphs 1 and 2 of the Customer Complaint Defense Coverage – Virginia Endorsement. Ms. Lutgen responded to this point in her June 30, 2025, letter to Ms. Giambelluca.

In that same letter, you also argued for coverage under the Commercial Liability Policy under Coverage A – Excess Follow Form Liability Insurance. However, Ms. Lutgen's July 22, 2025, letter explains that because Zurich denied coverage under the underlying policies, there is no coverage available under Coverage A – Excess Follow Form Liability Insurance. Nothing in my review supports Zurich reconsidering its initial position denying a duty to defend and/or to indemnify. I refer you to the coverage analysis contained in the June 30 and July 22, 2025, letters, which I incorporate here by reference.

Your August 14, 2025, letter contests Zurich's denial of coverage, citing the Acts, Errors, or Omissions Coverage – Virginia Endorsement. In the letter, you cite subsection b. (1) (a) through (e) of the endorsement. Zurich's response to this is found in the June 3, 2025, letter. The endorsement provides that:

A. Coverage

…

b. Under Statute and Title Errors and Omissions Coverage, we will pay for "damages" resulting from any claim or "suit" filed against you by or on behalf of:
   (1) A customer arising out of your "auto dealer operations", because of an alleged violation of any federal, state or local:
      (a) Odometer statute;
      (b) New or used auto damage or prior use disclosure statute;
      (c) Competitive auto parts statute;
      (d) Used car Buyers Guide, including Federal Regulation 455;
      (e) Statute requiring the display of automobile window stickers listing the manufacturer's suggested retail price for the vehicle and any of its accessories, including the Monroney Act.

None of the claims in the complaint fall within subcategories (a) through (e).

You then reiterated the argument from the August 12, 2025, letter concerning Excess Follow Form Liability Insurance under the Commercial Liability Policy. Please see my prior response to that.

Nothing in my review supports Zurich reconsidering its initial position denying a duty to defend and/or to indemnify. I refer you to the coverage analysis contained in the June 3, June 30 and July 22, 2025, letters, which I incorporate here by reference.

Your August 22, 2025, letter contests Zurich's denial of coverage, repeating the argument from the July 16 letter that Lindsay is entitled to coverage Casualty/Business Crisis coverage under the Umbrella Policy. Again, I refer you to Ms. Lutgen's response from the July 22, 2025, letter that there is no coverage available under Coverage C of the Umbrella Liability Policies because the definition of "casualty business crisis" means an event...that has been or may be associated with damages covered by this policy. Nothing in my review supports Zurich reconsidering its initial position denying a duty to defend and/or to indemnify. I refer you to the coverage analysis contained in the July 22, 2025, letter, which I incorporate here by reference.

By limiting its policy references to those cited above, Zurich does not waive its rights under any other policy provisions that may apply. The insurance policies in their entirety are incorporated herein by reference, as if stated in full, as are the letters identified as are Zurich's June 3, 2025, June 30, 2025 and July 22, 2025, coverage letters. If Zurich or I learn or are advised of other facts with respect to this claim, Zurich reserves the right to raise additional grounds for a coverage declination that may apply.

If you disagree with this coverage determination or if you have additional information or documentation that you believe may alter our coverage position, please forward that information to my attention for further review.

If you have any questions regarding the contents of this letter, please call me directly to discuss further.

Sincerely,

James P. Steele

# EXHIBIT B

LINDSAY EST. 1963

June 24, 2025

**<u>BY EMAIL</u>** – ***beth.lutgen@zurichna.com***
ZURICH AMERICAN INSURANCE COMPANY
Laten & Environmental Claims/Mass Litigation
Attn: Ms. Bethany Lutgen
1299 Zurich Way
Schaumburg, IL 60196

Re: <u>Federal Trade Commission, et al. v. Lindsay Chevrolet, LLC, et al.</u>
U.S. District Court for the Eastern District of Virginia, Alexandria Division
Civil Action No. 1:24-cv-02362
Zurich Claim No. 4720186925
Policies: ADM 5676243 00 - ADM 5676240 04; AUC 5594956 00 - AUC 5594956 04
Insured: Lindsay Motor Car Company, d/b/a Lindsay Automotive Group

Dear Ms. Lutgen:

I am the chief operating officer of the insured, Lindsay Automotive Group and its subsidiaries ("Lindsay") in the above-referenced matter. I am in receipt of your letter dated June 3, 2025 in the above-referenced matter. The purpose of this letter is to contest Zurich American Insurance Company ("Zurich") denial of Lindsay's claim concerning insurance coverage available to it as a result of the above-referenced claim.

## I. Casualty/Business Crisis

The Casualty Business Crisis under the Policy provides defense and indemnification coverage up to $250,000 in aggregate. Casualty business crisis is defined as "an event that in good faith with opinion of your principal, in the absence of casualty business crisis services, has been or may be associated with: (a) Damages covered by this policy under Coverage A that are in excess of the applicable limits of underlying insurance or under Coverage B that are in excess of the Retained Limit; and (b) significant adverse region or national media coverage." *See* U-UMB-103-C CW, Page 14 of 19.

Here, plaintiffs' lawsuit against Lindsay filed in the above-referenced matter has caused significant adverse regional media coverage, including, but not limited to, reports by the Washington Post[1], WTOP News[2], National Independent Automobile Dealers Association[3], and WUSA9[4]. As a result of this adverse media coverage, Lindsay has retained a crisis management firm to mitigate the fall out.[5]

Accordingly, the plaintiffs' claims as set forth in the above-referenced Complaint are covered under the Casualty/Business Crisis provision as the plaintiffs' claims against Lindsay has led to significant adverse media attention causing significant damage to Lindsay's business. Therefore, potential coverage exists, and Zurich has the obligation to indemnify Lindsay for fees it has incurred with respect to addressing the business crisis related to the plaintiffs' claims with coverage up to $250,000.00.

## II. Personal and Advertising Injury

In addition, the Personal and Advertising Injury under the Policy provides defense and indemnification coverage up to $1,000,000.00 in aggregate. The plaintiffs' claims as set forth in the Complaint are covered under the Personal and Advertising Injury of the Policy.

The Personal and Advertising Injury of the Policy states, in pertinent part:

Under Coverage B, we will pay on behalf of the Insured those damages the Insured becomes legally obligation to pay by reason of liability:

1. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
2. Assumed under an insured contract because of bodily injury or property damage.

***

[1] Authorities allege Lindsay Automotive Group deceived customers - The Washington Post

[2] DC-area car dealership group charged with deceiving and overcharging consumers for years - WTOP News

[3] FTC files complaint against Lindsay Automotive Group – Dashboard by NIADA

[4] Maryland, Virginia car dealers charged with misrepresenting car prices | wusa9.com

[5] Lindsay will produce the engagement letter upon request from Zurich.

> Personal and Advertising Injury means injury, including consequential bodily injury, arising out of one or more of the following offenses:
>
> ***
>
> (d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's organizations, goods, products and services.
>
> ***
>
> Personal and advertising injury also means mental anguish, mental injury, humiliation, or shock, if directly resulting from the offense listed in Items 12.a. through 12.g. above.

*See* U-UMB-103-C CW, page 1 of 19; *See also* Amended Definition of Personal and Advertising Injury – Coverage B, U-UMB-942-A-CW.

For the reasons stated above as it relates to the Casualty/Business Crisis portion of the Policies, Lindsay has clearly been the target of written publications that have disparaged Lindsay's organization, in addition to its goods, products and services. Therefore, additional potential coverage exists, and Zurich has the obligation to defend and indemnify Lindsay and any implicated agent and employee of Lindsay for the claims set forth in the above-referenced Complaint with coverage up to $1,000,000.00.

Lindsay looks forward to your prompt reply. While we are hopeful that Zurich will reconsider its past position and fulfill its obligations in this matter, Lindsay will take action to protect its interests in this matter.

Sincerely,

John E. Smallwood

cc: Mr. Burt Brenner (by email – burt.brenner@lindsaycars.com)
Ms. Anne Giambelluca (by email – anne.giambelluca@alliant.com)

# EXHIBIT C

Charapp & Weiss
DRIVING YOUR SUCCESS ®

October 13, 2025

**<u>BY EMAIL</u>** – ***james.steele@carrmaloney.com***
James P. Steele, Esquire
CARR MALONEY, P.C.
2000 Pennsylvania Avenue, N.W., Suite 801
Washington, DC 20006

Re: <u>Federal Trade Commission, et al. v. Lindsay Chevrolet, LLC, et al.</u>
U.S. District Court for the Eastern District of Virginia, Alexandria Division
Civil Action No. 1:24-cv-02362
Zurich Claim No. 4720186925
Policies: ADM 5676243 00 - ADM 5676240 04; AUC 5594956 00 - AUC 5594956 04
Insured: Lindsay Motor Car Company, d/b/a Lindsay Automotive Group

Dear Mr. Steele:

As you know, this firm represents the insured, Lindsay Automotive Group and its subsidiaries ("Lindsay") in the above-referenced matter. I am in receipt of your letter dated September 29, 2025, reaffirming Zurich's denial of both defense and indemnity in the above-referenced matter. While we acknowledge Zurich's coverage position, Lindsay respectfully disagrees. Zurich's denial improperly collapses the duty to indemnify and the duty to defend, ignores policy (the Policy") language creating a potential for coverage.

We respectfully request that Zurich reconsider its position in light of the policy language and applicable law. As explained below, the underlying complaint includes allegations that potentially fall within the policy's coverage, triggering Zurich's duty to defend under both Maryland and Virginia law. Moreover, the specialized coverages in the Policy – including the Customer Complaint Defense Coverage (Form U-CA-843-B VA) and Business Crisis Expense Coverage – reinforce Lindsay's expectation of a defense in this consumer-protection lawsuit. Zurich's heavy reliance on exclusionary endorsements (such as CG 21 38 – Exclusion of Personal and Advertising Injury) and certain "knowing or intentional acts" exclusions is premature and does not eliminate its duty to defend at this stage Lindsay; therefore, Lindsay requests that Zurich promptly withdraw its denial and assume the defense, consistent with its contractual and legal obligations. Lindsay reserves all rights should Zurich refuse to do so.

### I. Allegations Potentially Within Coverage – Unintentional Conduct

The complaint, filed in the above-referenced matter, accuses Lindsay of "deceptive and unfair" trade practices in advertising and selling vehicles. Notably, the inclusion of "unfair" practices means the case is not limited to deliberate wrongdoing – liability may be imposed even without intent to deceive. For example, a business practice can violate Maryland's Consumer Protection Act if it has the *tendency or effect* of misleading consumers, regardless of the seller's intent. The complaint indeed cites practices (such as charging for add-on products without consent) that could stem from miscommunications or oversight rather than knowing fraud.

In short, while the complaint alleges Lindsay engaged in wrongful acts, it does not conclusively establish that every consumer injury was expected or intentional from Lindsay's perspective. This leaves open the possibility that the claims involve negligent misrepresentations, mistakes in applying rebates or fees, or other non-intentional conduct. Such allegations fall potentially within standard liability coverage (e.g. "errors or omissions" or, but for Zurich's CG 21 38 endorsement, even "personal and advertising injury" coverage). At minimum, the pleadings do not foreclose a covered scenario. Under these circumstances, Zurich must extend a defense.

### II. Duty to Defend – Maryland and Virginia Law

Both Maryland and Virginia impose a broad duty to defend whenever the underlying allegations even potentially bring the claim within coverage. Maryland's Court of Appeals has long held that "[i]f there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend." Litz v. State Farm Fire &Cas. Co., 695 A.2d 566, 572 (Md. 1997). This "potentiality rule" means an insurer must defend even if some or most allegations may be groundless, false, or outside coverage. *See* Brohawn v. Transamerica Ins. Co., 276 Md. 396, 407, 347 A.2d 842, 850 (1975).

Similarly, Virginia follows the "eight corners" rule, comparing the four corners of the complaint with the policy. If the complaint alleges facts even arguably within policy coverage, the insurer must defend. *See* AES Corp. v. Steadfast Ins. Co., 283 Va. 609, 725 S.E.2d 532 (2012). Only when the alleged facts unambiguously fall outside coverage (or entirely within a policy exclusion) can a defense be denied. The Virginia Supreme Court's decision in AES Corp. v. Steadfast Ins. Co. is instructive. There, the court found no duty to defend a climate-change lawsuit only because the complaint explicitly alleged that the property damage was the "natural and probable consequence" of the insured's intentional emissions – effectively pleading the insured's knowledge and intent to cause harm. The AES Corp. case underscores that, for an insurer to escape defending on "no occurrence" grounds, the complaint must allege that the insured expected or intended the resulting injury (or that the harm was a certainty as a matter of law).

Here, in stark contrast, the FTC/AG complaint does not allege that Lindsay set out to cause harm to customers, nor does it rely on admission of intent. While it accuses Lindsay of deceptive practices, it also bases liability on statutes that do not require intentional wrongdoing. Unlike in *AES*, one can conceive of the alleged injuries (e.g. customers paying undisclosed fees) occurring through mismanagement or negligence, not necessarily through willful intent – especially given that "unfair" practices can include practices that the company *"should have known"* were harmful. Therefore, under both Maryland's and Virginia's standards, the allegations at least potentially fall within the policy's coverage for accidental injuries or errors. Zurich cannot conclusively treat this as a 100% intentional case at the pleading stage. Consequently, Zurich owes a duty to defend Lindsay against the entire action, even if certain claims might later be proven intentional or deemed uninsurable. As Maryland courts have emphasized, an insurer may not pick and choose which allegations to defend – if any count or theory is potentially covered, the insurer must defend the entire suit.[1]

The proper course in such mixed-allegation cases is for the insurer to defend under a reservation of rights, not to deny coverage outright. If Zurich is concerned about potential conflicts between Lindsay's interests and its own (due to the intentional wrongdoing allegations), the law provides a solution: Zurich must still defend, but it should allow independent counsel to protect Lindsay's interests, at Zurich's expense. *See* Brohawn, 276 Md. at 407, 347 A.2d at 850 (1975). What Zurich may not do is simply abandon its insured in the face of a suit that triggers defense coverage.

### III. Customer Complaint Defense & Business Crisis Coverages – Lindsay's Reasonable Expectations

Lindsay specifically purchased endorsements to cover the defense of customer complaints and the management of business crises. These coverages evidence Lindsay's expectation that a consumer-facing lawsuit would be defended by its insurer. In particular, the Customer Complaint Defense Coverage (U-CA-843-B VA) was bargained for as part of the policy. We understand this coverage provides reimbursement of defense costs (up to a stated limit) for certain actions or proceedings arising out of customer complaints. A major government lawsuit alleging harm to customers is certainly within the spirit of this coverage, if not its letter. Industry sources note that specialized auto dealer policies often cover legal expenses and even fines stemming from consumer protection law violations and regulatory actions. It is difficult to imagine a more apt scenario for deploying the Customer Complaint Defense Coverage than the present case, where federal and state authorities are essentially pressing a compendium of customer grievances on a broad scale. Denying a defense here would defeat the very purpose for which Lindsay obtained this endorsement. Likewise, the policy's Business Crisis Expense Coverage was intended to help the insured weather extraordinary reputational and operational crises – exactly the situation an FTC/AG enforcement action creates. Zurich's own materials acknowledge that such crisis

[1] *See* Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 779 N.E.2d 167, 172 (N.Y. 2002) ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.") (internal quotation marks omitted); *see also* Kubit v. MAG Mut. Ins. Co., 708 S.E.2d 138, 144 (N.C. 2011); Utica Mut. Ins. Co. v. Miller, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000).

coverage is meant to cover expenses like defense costs, court fees, and crisis management in the face of a serious threat to the business.

By including this coverage, Lindsay sought peace of mind that if a public relations or legal crisis struck (for example, widespread allegations of misconduct), Zurich would step in to assist. The current litigation has already generated negative publicity and could significantly impact Lindsay's reputation and finances. Yet, Zurich's refusal to defend or provide any support starkly contradicts the policy's promise of crisis management protection. Lindsay reasonably expected that Zurich would have its back in a "bet-the-company" consumer-lawsuit scenario. We urge Zurich to honor that expectation. These additional coverages bolster the conclusion that the policy, when read as a whole, was designed to cover the defense of this very type of claim. At a minimum, Zurich should immediately tender the available Customer Complaint Defense coverage to fund Lindsay's defense costs (without prejudice to Lindsay's right to full coverage if applicable).

**IV. Exclusions Cited by Zurich Do Not Defeat the Duty to Defend**

In its denial, Zurich appears to rely on several policy exclusions – specifically, the "knowing violation," "failure to conform," and "criminal acts" exclusions – to contend that no defense is owed. We address each in turn. Importantly, even if these exclusions might limit indemnity in certain circumstances, none of them relieves Zurich of the current duty to defend, because the underlying allegations have not been conclusively established to fall within these exclusions.

- **Knowing Violation Exclusion:** The Policy excludes coverage for personal/advertising injury caused by the insured's knowing violation of another's rights (or knowing infliction of harm). Zurich argues that the complaint's references to intentional deception trigger this exclusion. However, as discussed, the complaint also encompasses allegations of statutory "unfair" practices that do not require knowing or intentional conduct. The Maryland Consumer Protection Act claims, for example, could be satisfied by showing Lindsay's practices had a tendency to mislead, even if no manager deliberately set out to defraud a customer. At the defense stage, one cannot simply assume that Lindsay actually acted with knowledge of falsity or intent to injure; those are issues for trial. The mere allegation of knowing conduct does not nullify Zurich's defense duty, because the claims could be sustained on lesser mental states (negligence, recklessness, etc.). Maryland law places the burden on the insurer to prove that an exclusion applies to every theory of recovery in the complaint, and here there are covered theories (negligence/unintentional misrepresentation) still very much in play.[2] Until it is established that Lindsay's liability

2 See, e.g., Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 201 (Tex. 2004) ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."); Hartford Fire Ins. Co. v. Whitehall Convalescent & Nursing Home, Inc., 748 N.E.2d 674, 682 (Ill. App. Ct. 2001) ("If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false or fraudulent."); Litz v. State Farm Fire &Cas. Co., 695 A.2d 566, 572 (Md. 1997) ("If there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend.")

(if any) was solely the result of knowing, deliberate acts – which cannot be determined from the complaint alone – the knowing-violation exclusion cannot excuse Zurich's refusal to defend.

- **"Failure to Conform" Exclusion:** Zurich also points to the exclusion for failure of goods, products, or services to conform to advertised statements. This appears to be aimed at false advertising of product quality or price. While it is true that part of the FTC/AG complaint alleges Lindsay advertised low vehicle prices that it did not honor for most customers, the lawsuit is not limited to a simple "product not as advertised" claim. The complaint describes a three-part scheme: (1) bait-and-switch pricing, (2) mandatory dealership financing, and (3) unauthorized add-on fees. Many of these allegations go beyond a failure to conform to an advertised price or feature. For instance, charging consumers for add-ons without consent or falsely stating that add-on products are required is a form of misrepresentation and unfair dealing– but it is not a "failure of a product to perform as advertised." Similarly, telling customers they must finance through the dealership (to obtain a kickback) is a deceptive business practice, not an issue of a product failing to match its advertising. These nuances are important. The "failure to conform" exclusion, read narrowly (as exclusions must be), might apply to a claim that a car or warranty wasn't as good as advertised, or a price not honored strictly as a breach of contract matter. It would not obviously apply to the sort of fraudulent inducement and add-on sales scheme alleged here. Even if Zurich contends the exclusion could sweep up the pricing allegations, at best that would potentially bar coverage for one aspect of the case. It does not relieve Zurich of defending the numerous other allegations that fall outside the exclusion's ambit. In short, because at least some of the complaint's theories do not rest on an "advertised goods not as portrayed" premise, the failure-to-conform exclusion cannot negate the duty to defend the case in full. Zurich must defend and reserve rights, rather than unilaterally refusing defense based on an overbroad reading of this exclusion.

- **Criminal or Fraudulent Acts Exclusion:** Zurich's denial letter mentioned the policy's exclusion for criminal, dishonest or fraudulent acts. This exclusion is inapplicable on its face to the present civil enforcement action. The FTC/AG lawsuit is a civil proceeding seeking injunctive relief, restitution, and civil penalties – it is not a criminal prosecution. There have been no criminal charges filed against Lindsay or its executives in this matter, and the complaint does not allege a crime such as fraud in the criminal sense (it alleges violation of civil statutes and regulations). Thus, the "criminal acts" portion of the exclusion simply does not attach. As for fraudulent acts: while the complaint accuses Lindsay of deceptive practices, "fraud" has not been proven, and Zurich cannot simply assume fraudulent conduct by its insured. Courts routinely hold that an insurer cannot avoid defending a suit by labeling the allegations "fraud" or "dishonesty" before any adjudication, especially when the insured has consistently denied wrongdoing (as Lindsay has publicly done. The duty to defend is based on allegations, and ambiguous allegations

must be construed in favor of the insured.[3] Here, the allegations leave room for findings of lesser culpability (such as regulatory violations without intent to defraud each customer). Until a final judgment establishes that Lindsay committed fraud or intentional misconduct triggering this exclusion, Zurich remains obligated to defend. In analogous situations, insurers have been required to defend under reservation even where intentional or fraudulent acts were alleged, because a possibility of coverage existed if the insured were found liable on non-fraudulent grounds. *Id.* The same principle applies here. Zurich's broad invocation of the criminal/fraud exclusion is therefore not a valid basis to refuse a defense.

In summary, none of the cited exclusions conclusively forecloses the potential for coverage at this preliminary stage. Zurich's duty to defend is *distinct* from its duty to indemnify – it is broader and exists whenever the claim against the insured may even potentially be covered. Here, given the mix of allegations and the policy provisions favoring coverage, Zurich must defend Lindsay unless and until the underlying action is narrowed solely to non-covered claims (for example, if it were to be proven that Lindsay committed deliberate fraud causing harm, and no covered theory remains). That is not the case now. At present, the complaint's allegations and causes of action trigger Zurich's defense obligation. We also note that Zurich's denial of defense, if maintained, would put Lindsay at a severe disadvantage in the litigation that the insurance was meant to guard against. Lindsay has been forced to fund its own defense in a complex, resource-intensive lawsuit that could potentially result in significant liability. Meanwhile, Lindsay has been paying substantial premiums for insurance coverage (including the specialized endorsements discussed above) precisely to avoid this type of scenario. Zurich's refusal to defend thus undermines the core purpose of the insurance contract and may expose Zurich to claims of breaching the duty to defend and bad faith.

In light of the foregoing, Lindsay respectfully demands that Zurich withdraw its denial and confirm in writing that it will assume Lindsay's defense in the FTC/AG litigation. This includes honoring the Customer Complaint Defense Coverage forthwith and providing a full defense (appointed counsel acceptable to Lindsay or funding of Lindsay's chosen independent counsel, due to the conflict issues noted). We ask that Zurich respond no later than October 22, 2025, so that we can avoid further prejudice to the defense of the underlying case. Time is of the essence, as the litigation is ongoing and defense costs are mounting.

While we are hopeful this matter can be resolved amicably, Lindsay expressly reserves all rights under the policy and at law. Nothing herein shall waive any of Lindsay's rights or remedies. If Zurich continues to refuse to defend, Lindsay will have no choice but to pursue all available remedies, including but not limited to a declaratory judgment action to enforce coverage and recovery of defense costs, as well as any appropriate claims under Maryland or Virginia law for insurance bad faith. We sincerely prefer to resolve this without litigation, but Zurich's duty to defend is paramount and non-delegable – it must be honored.

---

[3] Litz v. State Farm Fire &Cas. Co., 695 A.2d 566, 572 (Md. 1997) ("If there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend.").

Thank you for your prompt attention to this serious matter. We are prepared to discuss next steps to expedite the provision of a defense. Lindsay values its relationship with Zurich and trusts that Zurich will do the right thing by defending its insured. We look forward to your response.

Sincerely,

/s/ *Brad D. Weiss*

Brad D. Weiss

cc: Mr. Burt Brenner (by email – burt.brenner@lindsaycars.com)
Mr. John E. Smallwood (by email – john.smallwood@lindsaycars.com)

# EXHIBIT D

CARR MALONEY PC
Offices in Washington, DC Maryland Virginia West Virginia
2000 Pennsylvania Avenue, NW, Suite 8001 Washington, DC 20006
T: 202-310-5500 F: 202-310-5555 carrmaloney.com

**James P. Steele**
**Partner**
**(202) 310-5521**
**james.steele@carrmaloney.com**
**Admitted in MD & DC**

October 30, 2025

***Via Email & Regular mail***

Brad D. Weiss, Esquire
Charapp & Weiss
1818 Library St Suite 500
Reston, Virginia 20190
bweiss@cwattorneys.com

Re: *Federal Trade Commission, et al. v. Lindsay Chevrolet, LLC, et al.*
U.S. District Court for the Eastern District of Virginia, Alexandria Division
Civil Action No. 1:24-cv-02362
Zurich Claim No. 4720186925
Policies: ADM 5676243 00 - ADM 5676240 04; AUC 5594956 00 – AUC 5594956 04
Insured: Lindsay Motor Car Company, d/b/a Lindsay Automotive Group

Dear Mr. Weiss:

As you know, I represent Zurich American Insurance Company and American Guarantee and Liability Insurance Company (collectively Zurich) regarding the coverage issue in the above-referenced matter. I write to respond to your letter dated October 13, 2025. In that letter, you demanded that Zurich withdraw its coverage denial and assume the defense of Lindsay Motor Car Company, d/b/a Lindsay Automotive Group (Lindsay) in the above-referenced litigation. The October 13 letter limits itself to the Customer Complaint Defense Coverage and Business Crisis Expense Coverage parts and your perception that certain exclusions do not apply. Please let me know if you think Zurich and I are mistaken about this.

In analyzing your demand, I reviewed the letters and policies I referred to in my September 29, 2025 letter, and your October 13, 2025 letter. Based on this review, Zurich reaffirms its denial of coverage for this lawsuit. Accordingly, Zurich will neither defend nor indemnify Lindsay.

In your October 13, 2025 letter you relied on the Customer Complaint Defense Coverage (Form U-CA-843-B VA) and the Business Crisis Expense Coverage, Coverage C, in the Umbrella policies. You also referred to Zurich's reliance on certain "exclusionary endorsements."

The reasons the Customer Complaint Defense Coverage and Business Crisis Expense Coverage do not apply have been addressed in prior letters, and I refer you to that correspondence. This includes but is not limited to including Bethany Lutgen's June 30, 2025 letter to Anne Giambelluca and Ms. Lutgen's July 22, 2025 letter to you.

In addition, Customer Complaint Defense Coverage and Business Crisis Expense Coverage are not defense coverages. The insuring agreements on those coverages do not impose a duty to defend on Zurich. Your argument in the October 13 letter does not bring the claim within the insuring agreement of either of these coverages.

Zurich reserves the right to deny coverage based on any and all exclusions referred to in any of these letters, including but not limited to Knowing Violation Exclusions for personal/advertising injury (page 4 of your October 13 letter), Failure to Conform exclusions (page 5 of your October 13 letter) or Criminal or Fraudulent Acts Exclusions (page 5 of your October 13 letter).

By limiting its policy references to those cited above and in Zurich's prior correspondence, Zurich does not waive its rights under any other policy provisions that may apply. The insurance policies in their entirety are incorporated herein by reference, as if stated in full, as are the letters identified as Zurich's June 3, 2025, June 30, 2025, July 22, 2025, and September 29, 2025 coverage letters. If Zurich or I learn or are advised of other facts with respect to this claim, Zurich reserves the right to raise additional grounds for a coverage declination that may apply.

If you disagree with this coverage determination or if you have additional information or documentation that you believe may alter our coverage position, please forward that information to my attention for further review.

If you have any questions regarding the contents of this letter, please call me directly to discuss further.

Sincerely,

James P. Steele

# EXHIBIT E

CARR MALONEY PC
2000 Pennsylvania Avenue, NW, Suite 8001 Washington, DC 20006
Offices in Washington, DC Maryland Virginia West Virginia
T: 202-310-5500 F: 202-310-5555 carrmaloney.com

**James P. Steele**
**Partner**
**(202) 310-5521**
**james.steele@carrmaloney.com**
**Admitted in MD & DC**

November 13, 2025

***Via Email & Regular mail***

Brad D. Weiss, Esquire
Charapp & Weiss
1818 Library St Suite 500
Reston, Virginia 20190
bweiss@cwattorneys.com

Re: *Federal Trade Commission, et al. v. Lindsay Chevrolet, LLC, et al.*
U.S. District Court for the Eastern District of Virginia, Alexandria Division
Civil Action No. 1:24-cv-02362
Zurich Claim No. 4720186925
Policies: ADM 5676243 00 - ADM 5676240 04; AUC 5594956 00 – AUC 5594956 04
Insured: Lindsay Motor Car Company, d/b/a Lindsay Automotive Group

Dear Mr. Weiss:

As you know, I represent Zurich American Insurance Company and American Guarantee and Liability Insurance Company (collectively Zurich) regarding the coverage issue in the above-referenced matter. I write to respond to your letter dated November 3, 2025. In that letter, you contested Zurich's denial of claims made by Lindsay Motor Car Company, d/b/a Lindsay Automotive Group (Lindsay) concerning insurance coverage Lindsay asserts are available to it as a result of the above-referenced litigation. The November 3 letter limits itself to Lindsay's argument that the Casualty Business Crisis Expense Coverage applies. Please let me know if you think Zurich and I are mistaken about this.

In analyzing your letter, I reviewed the letters and policies I referred to in my September 29, 2025 letter, and your October 13, 2025 letter. I also reviewed the letter dated July 22, 2025[1], from Beth Lutgen to you, and my letter to you dated September 29, 2025, both of which address the Casualty Business Crisis Expense Coverage issue. I incorporate both of those letters here.

[1] In reviewing some of the past correspondence, I discovered a typographical error on page 3 of my letter to you dated September 29, 2025. In the paragraph beginning, "Nothing in my review …," I referred you to a letter dated "July 16," which I incorporated by reference. That sentence should read, "I refer you to the coverage analysis contained in Beth Lutgen's July 22, 2025, letter to you, which I incorporate here by reference."

CARR MALONEY PC



Lindsay is not entitled to that coverage because it does not apply. Based on this review, Zurich reaffirms its denial of coverage for this lawsuit.

In the November 3, 2025, letter, you also asked whether Zurich was amenable to arbitrate the Casualty Business Crisis Expense issue under Section VI (C)(2) of the Commercial Umbrella Liability Policies. The arbitration provision does not apply because coverage does not apply under the Casualty Business Crisis Expense of the Commercial Umbrella Liability Policies. Therefore, Zurich is not amenable to arbitrate this issue.

By limiting its policy references to those cited above and in Zurich's prior correspondence, Zurich does not waive its rights under any other policy provisions that may apply. The insurance policies in their entirety are incorporated herein by reference, as if stated in full, as are the letters identified as Zurich's June 3, 2025, June 30, 2025, July 22, 2025, September 29, 2025 and October 30, 2025, coverage letters. If Zurich or I learn or are advised of other facts with respect to this claim, Zurich reserves the right to raise additional grounds for a coverage declination that may apply.

If you disagree with this coverage determination or if you have additional information or documentation that you believe may alter our coverage position, please forward that information to my attention for further review.

If you have any questions regarding the contents of this letter, please call me directly to discuss further.

Sincerely,

James P. Steele

CW

# Charapp & Weiss

DRIVING YOUR SUCCESS ®

2026 03849

FILED
CIVIL INTAKE
2026 MAR -6 A 8: 39
CHRISTOPHER J. FALCON
CLERK, CIRCUIT COURT
FAIRFAX, VA

March 6, 2026

Office of the Clerk
Civil Intake
Circuit Court of Fairfax County
4110 Chain Bridge Road, 3rd Floor
Fairfax, VA 22030

Re: Lindsay Chevrolet, L.L.C. v. Zurich American Insurance, et al.

Dear Sir or Madam:

I have enclosed the following:

1. An original Civil Case Coversheet;
2. An original and 3 copies of a Complaint;
3. Plaintiff's Initial Discovery to be served with process; and
4. A check for $375.00 for the filing and service fees.

**Please attach the enclosed discovery requests to each of the respective defendant's service packet and include it with the Summons and Complaint.**

Please also stamp the extra copy of the Complaint with the date and time received and return it to me in the enclosed self-addressed, stamped envelope.

Thank you.

Sincerely,

Elizabeth A. Dwyer

Enclosures
Cc: Client (by email)

571-346-7507 cwattorneys.com 1818 Library Street, Suite 500 Reston, VA 20190