UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| LINDSAY CHEVROLET, LLC, LINDSAY FORD, LLC, LINDSAY MOTORS, LLC, and LINDSAY MANAGEMENT COMPANY, LLC<br>*Plaintiffs*,<br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: 1:26-cv-01037-LMB-WEF |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ ii

I. Introduction ........ 1

II. Statement of Undisputed Facts ........ 1

A. The Policies ........ 1

B. Coverage Dispute ........ 2

C. Underlying Action ........ 3

III. Legal Standard ........ 7

A. Summary Judgment Standard ........ 7

B. Principles of Insurance Contract Interpretation ........ 8

IV. Argument ........ 9

A. Zurich Owes No Obligations to Lindsay Under the Primary Policies ........ 9

1. The CGL Coverage Part Does Not Apply to the Underlying Action ........ 9

*a. No Coverage is Due under Coverage A of the CGL Coverage Part* ........ 10

*b. No Coverage is Due under Coverage B of the CGL Coverage Part* ........ 11

2. The ADL Coverage Part Does Not Apply to the Underlying Action ........ 12

*a. No Coverage is Due under Section II of the ADL Coverage Part* ........ 12

(1) The Underlying Action Does Not Allege "Bodily Injury" or "Property Damage" ........ 12

(2) The Underlying Action Does Not Allege "Personal and Advertising Injury" .. 13

(3) The Underlying Action is not a "Suit" ........ 14

(4) The Underlying Action did not Seek Potentially Covered Relief ........ 16

*b. No Coverage is Due under Section III of the ADL Coverage Part* ........ 17

*c. No Coverage is Due under the Customer Complaint Defense Endorsement* ........ 21

*d. No Coverage is Due under the Designated Statute Defense Endorsement* ........ 22

*e. Zurich Owes No Indemnity Obligation Under Any Part of the Primary Policies* .... 23

B. Zurich Owes No Obligation to Lindsay under the Umbrella Policies ..................... 24

1. Coverage A – Excess Follow Form Liability Insurance Does Not Apply.................... 24

2. Coverage B – Umbrella Liability Insurance Does Not Apply ..................................... 25

3. Coverage C – Casualty Business Crisis Expense Coverage Does Not Apply.............. 26

*a. Lindsay Failed to Provide Timely Notice of any "Casualty Business Crisis"* ........ 27

*b. The Underlying Action is Not a "Casualty Business Crisis" Arising From any "Occurrence"* ........................................................................................................ 29

V. Conclusion ................................................................................................................... 30

# I. INTRODUCTION

Plaintiffs Lindsay Chevrolet, LLC, Lindsay Ford, LLC, Lindsay Motors, LLC, and Lindsay Management Company, LLC (together, "Lindsay") seek defense and indemnity coverage under a series of primary and umbrella liability insurance policies issued by Defendants Zurich American Insurance Company and American Guarantee and Liability Insurance Company (together, "Zurich"), for a lawsuit filed by the Federal Trade Commission ("FTC") and the Office of the Maryland Attorney General, Consumer Protection Division ("Division") in the United States District Court for the Eastern District of Virginia, Alexandria Division captioned, *Federal Trade Commission, et al. v. Lindsay Chevrolet, LLC, et al.*, Case No. 1:24-cv-02362 (the "Underlying Action"). The policies do not afford coverage for the Underlying Action.

# II. STATEMENT OF UNDISPUTED FACTS

## A. The Policies

1. Zurich issued combined commercial liability insurance policy nos. ADM 5676243-00, ADM 5676243-01, ADM 5676243-02, ADM 5676243-03, and ADM 5676243-04 (each a "Primary Policy" and together, the "Primary Policies") to Lindsay Automotive Group, 1525 Kenwood Ave., Alexandria, Virginia 22302-2319, effective, serially, for the policy period of July 1, 2020 to July 1, 2025.[1] (*See* Compl. ECF No. 1-1 ¶¶ 11, 13.)

2. Zurich also issued commercial umbrella liability insurance policy nos. AUC 5594956-00, AUC 5594956-01, AUC 5594956-02, AUC 5594956-03, and AUC 5594956-04

[1] Primary Policy No. ADM 5676243-02 (with redacted premium information) is attached as **Exhibit A**. Zurich omits complete copies of Primary Policy Nos. ADM 5676243-00, ADM 5676243-01, ADM 5676243-03, and ADM 5676243-04, as each contain the same material forms, endorsements, and terms as the 02 Primary Policy. The Common Policy Declarations, Schedule of Forms and Endorsements, Commercial General Liability Coverage Part Declarations Schedule of Coverages, and Auto Dealer Declarations Schedule of Coverages for Primary Policy Nos. ADM 5676243-00, ADM 5676243-01, ADM 5676243-03, and ADM 5676243-04 (with redacted premium information) are attached as **Exhibits B**, **C**, **D**, and **E**.

(each a "Umbrella Policy" and together, the "Umbrella Policies") to Lindsay Automotive Group, effective, serially, for the policy period of July 1, 2020 to July 1, 2025.[2] (*See* Id. at ¶¶ 12, 13.)

**B. Coverage Dispute**

3. On March 21, 2025, Lindsay tendered to Zurich a claim for defense and indemnity coverage in connection with the Underlying Action.[3, 4]

4. By letter dated June 3, 2025, Zurich denied coverage for Lindsay's insurance claim, citing multiple provisions of the Primary Policies and Umbrella Policies.[5]

5. Lindsay made multiple requests for reconsideration of Zurich's June 3, 2025 denial, and submitted subsequent claims for coverage under additional coverage parts.[6] Among them, by letter on July 16, 2025, Lindsay, through its counsel, first sought coverage for alleged crisis management expenses Lindsay claimed it had incurred, pursuant to Coverage C – Casualty Business Crisis Expense Coverage under the Umbrella Policies.[7] Zurich at all times maintained that no coverage was owed under the policies in connection with the Underlying Action.[8]

6. On March 9, 2026, Plaintiffs filed this declaratory judgment action in the Circuit Court of Fairfax Virginia.[9] Zurich removed the case to this Court based on diversity jurisdiction.[10]

---

[2] Umbrella Policy No. AUC 5594956-02 (with redacted premium information) is attached as **Exhibit F**. Zurich omits complete copies of Umbrella Policy Nos. AUC 5594956-00, AUC 5594956-01, AUC 5594956-03, and AUC 5594956-04, as each contain the same material forms, endorsements, and terms as the 02 Umbrella Policy. The Commercial Umbrella Liability Policy Declarations, Schedule of Forms and Endorsements, and Extended Schedule of Underlying Insurance for Umbrella Policy Nos. AUC 5594956-00, AUC 5594956-01, AUC 5594956-03, and AUC 5594956-04 (with redacted premium information) are attached as **Exhibits G**, **H**, **I**, and **J**.

[3] **Exhibit K**, Lutgen Decl. at 0001 [¶¶ 2-3]; **Exhibit K-1**, Lindsay Claim Submission, at 0001.

[4] Citation to Exhibits K-1 through K-4 refer to exhibits to the Declaration of Beth Lutgen, Ex. K.

[5] Ex. K at 0001 [¶¶ 7-8]; **Exhibit K-2**, Zurich Denial. *See also*, Compl. ECF No. 1-1 at 21-32.

[6] Ex. K at 0001 [¶¶ 9-10]; **Exhibit K-3**, Lindsay Response Letters.

[7] Ex. K-3 at 0003-0004.

[8] **Exhibit K-4**, Zurich Reply Letters.

[9] Compl., ECF No. 1-1.

[10] Notice of Removal, ECF No. 1.

**C. Underlying Action**

7. The Underlying Action was filed on December 27, 2024.[11] The FTC and Division filed their operative Second Amended Complaint ("SAC") on July 31, 2025.[12]

8. The SAC consists of claims brought by the FTC, for violations of the FTC Act, and by the Division, for violations of Maryland's Consumer Protection Act ("CPA"):

> **The FTC brings this action for [Lindsay's] violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).** [Lindsay's] violations relate to deceptive and unfair practices in the advertising, marketing, promotion, offering for sale, lease or financing, and sale, lease, or financing of motor vehicles. For these violations, the FTC seeks relief, including a permanent injunction and other relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).[13]
>
> **The Division brings this action under Maryland's Consumer Protection Act ("CPA")** [], to enjoin [Lindsay] from engaging in unfair or deceptive trade practices in the course of offering and selling vehicles to consumers in the State of Maryland, and to obtain relief for those consumers victimized by [Lindsay's] unlawful practices.[14]

9. The SAC states that "Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits 'unfair or deceptive acts or practices in or affecting commerce.'"[15] Alleged conduct in violation of the FTC Act is addressed in Counts I through V of the SAC.[16] These causes of action were brought "[b]y Plaintiff FTC against all Defendants".[17]

---

[11] Compl., ECF No. 1-1 at 6 [¶ 22]; *FTC, et al. v. Lindsay Chevrolet, LLC, et al.*, No. 1:24-cv-2362 (E.D. Va. Dec. 27, 2024), ECF No. 1. Zurich requests that this Court take judicial notice of the pleadings and papers filed in the Underlying Action pursuant to Fed. R. Evid. 201. *See e.g.*, *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.")

[12] *FTC, et al. v. Lindsay Chevrolet, LLC, et al.*, No. 1:24-cv-2362 (E.D. Va. Jul. 31, 2025), Second Am. Compl., ECF No. 117.

[13] **Exhibit L**, Second Amen. Compl., at 0001-0002 [¶ 1] (emphasis added). For clarity, where the SAC addresses Lindsay as "Defendants," that term has been replaced with "Lindsay."

[14] *Id.* at 0002 [¶ 2] (emphasis added).

[15] *Id.* at 0019 [¶ 55].

[16] *Id.* at 0019-0022.

[17] *Id.*

10. The SAC states that "Section 13-303 of the CPA prohibits a person from engaging in any unfair or deceptive trade practice, as defined by the CPA, in connection with the offer, sale, lease or rental of any consumer good or consumer services."[18] Alleged conduct in violation of the CPA is addressed Counts VI through VIII of the SAC.[19] These causes of action were brought "[b]y Plaintiff Division against all of the Defendants".[20]

11. The SAC alleged that "Lindsay has systematically engaged in a pattern of unlawful conduct harming consumers seeking to purchase, finance, and lease motor vehicles."[21] The SAC alleged that "Lindsay's illegal practices take several forms."[22] As further described in the SAC:

> First, Lindsay tricks consumers into visiting its dealerships by touting low prices in online advertisements. However, Lindsay does not honor these prices. Instead, in numerous instances, Lindsay charges consumers thousands of dollars more than the advertised price.
>
> Second, Lindsay often falsely claims that consumers must pay additional fees to purchase a vehicle if they do not finance through Lindsay, for which Lindsay receives monetary "kickbacks."
>
> Third, in many instances, Lindsay tacks fees for unwanted add-ons such as service contracts, GAP coverage, or extended warranties onto consumers' deals either without consumers' consent or after falsely telling consumers those add-ons are required.[23]

12. The SAC brought claims against "individual defendants" as well.[24] The "individual defendants" are Michael Lindsay (part-owner and president of Lindsay Chevrolet, Lindsay Ford, Lindsay Motors, and Lindsay Management), John Smallwood (Chief Operating Officer of Lindsay Management), and Paul Smyth (General Manager of Lindsay Chevrolet, Lindsay Ford, and

---

[18] Ex. L, at 0022 [¶ 77].
[19] *Id.* at 0022-0025.
[20] *Id.*
[21] *Id.* at 0005 [¶ 19].
[22] *Id.*
[23] *Id.* at 0005-0006 [¶ 19].
[24] *Id.* at 0003-0004 [¶¶ 13-15].

Lindsay Motors).[25] The SAC alleges that each of the individual defendants, "acting alone or in concert with others, [] formulated, directed, controlled, had the authority to control, or participated in the acts and practices described in [the SAC]".[26] The SAC also alleges these individual defendants "regularly received complaints regarding the practices described in [the SAC]", "are aware of the ongoing, unlawful practices", that "have the authority to stop Lindsay's unlawful practices", but "[n]evertheless, Lindsay's misconduct has persisted."[27]

13. The SAC stated that Lindsay's unlawful practices were occurring as early as 2013:

> The Virginia Motor Vehicle Dealer Board ('MVDB') has cited the Lindsay dealerships for these unlawful practices at least four separate times, going back over a decade. In 2013, following multiple complaints, the MVDB warned Lindsay Chevrolet that its practice of advertising prices that include rebates, incentives, or dealer discounts unavailable to all consumers violates Virginia law.[28]

14. The SAC delineated specific relief sought by the FTC and/or Division:[29]

i. "[A] permanent injunction to prevent future **violations of the FTC Act and the CPA**[.]"[30]

ii. "[T]o redress injury to consumers resulting from [Lindsay's] **violations of the CPA**, including, but not limited to, the disgorgement and restitution to consumers of all moneys that [Lindsay] received in connection with their unfair or deceptive trade practices and payment of all other economic damages incurred by these consumers in connection with [Lindsay's] unfair or deceptive trade practices, **pursuant to Md. Code Ann., Com. Law § 13-406**[.]"[31]

iii. "Require [Lindsay] to pay the costs of [the Underlying Action], including all costs of investigation, pursuant to **Md. Code Ann., Com. Law § 13-409**."[32]

---

[25] Ex. L at 0003-0004 [¶¶ 13-15].
[26] *Id.*
[27] *Id.* at 0003-0004, 0016 [¶¶ 13-15, 48].
[28] *Id.* at 0016 [¶ 49].
[29] *Id.* at 0025-0026 [¶¶ A–D].
[30] *Id.* at 0025 [¶ A]. (emphasis added).
[31] *Id.* [¶ B]. (emphasis added).
[32] *Id.* at 0026 [¶ C]. (emphasis added).

iv. "Require [Lindsay] to pay a civil penalty **pursuant to Md. Code Ann. Com. Law § 13-410(a)** of up to $10,000 for each violation [Lindsay] committed **of the CPA**[.]"[33]

15. On April 2, 2026, the District Court in the Underlying Action approved a "Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief" (the "Final Order") submitted the FTC, Division, and Lindsay.[34]

16. The Final Order ordered three forms of prospective and permanent injunctive relief "in connection with advertising, marketing, promoting, offering for sale, lease, or financing, or selling, leasing, or financing motor vehicles", including: (a) "from misrepresenting" items related to "the costs or terms of purchasing, financing, or leasing a vehicle"; (b) "from representing" information related to "any amount a consumer may pay … without disclosing the Total Price, Clearly and Conspicuously, as the most prominently displayed item in any visual disclosure"; and (c) "from charging a consumer without having obtained the consumer's Express, Informed Consent."[35]

17. The Final Order also ordered that Lindsay shall pay "consumer redress" – i.e., "Defendants shall pay a restitution amount that is equal to: (1) the amounts consumers paid for the purchase or lease price of their vehicles that was higher than a price advertised by [Lindsay]; and (2) the amounts consumers paid for Add-On Products or Services that consumers did not agree to purchase or thought were required."[36] The Final Order provides that "[t]his restitution amount" shall be determined through a claims process in cooperation with the Maryland Attorney General and a "Claims Administrator" approved by the Maryland Attorney General.[37]

---

[33] Ex. L at 0026 [¶ D]. (emphasis added).
[34] *FTC, et al. v. Lindsay Chevrolet, LLC, et al.*, No. 1:24-cv-2362 (E.D. Va. Apr. 2, 2026), Final Order, ECF No. 228.
[35] **Exhibit M**, Final Order, at 0005-0006 [§§ I–III].
[36] *Id.* at 0006-0007 [§ IV].
[37] *Id.* at 0007 [§§ IV.A.–B.].

18. Lastly, the Final Order entered "Judgment in the amount of Three Million One Hundred Thousand Dollars ($3,100,000), [] against [Lindsay and the individual defendants], jointly and severally, to be utilized by the Maryland Attorney General for future consumer protection enforcement or consumer education, or any other lawful public purpose designated by the Maryland Attorney General." [38]

## III. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate when a court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A movant may demonstrate the absence of a genuine issue of material fact by pointing out the absence of evidence to support a claim on which the nonmovant bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party opposing a properly made and supported motion for summary judgment bears the burden of proving a genuine dispute of fact exists. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A "material fact" is one that might affect the outcome of the case as determined by the substantive law. *See Powell v. U.S. Fid. & Guar. Co.*, 855 F. Supp. 858, 860 (E.D. Va. 1994).

---

[38] Ex. M at 0011 [§ V].

**B. Principles of Insurance Contract Interpretation**[39]

Insurance policy interpretation is a question of law appropriate for resolution on summary judgment. *See Minn. Lawyers Mut. Ins. Co. v. Protostorm LLC*, 197 F. Supp. 3d 876, 882 (E.D. Va. 2016) (citing *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 826 F. Supp. 155, 157 (E.D. Va. 1993), *aff'd*, 48 F.3d 778 (4th Cir. 1995)). Under Virginia law, an insurance policy is interpreted "in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done.'" *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) (citations omitted). Virginia courts apply an "objective theory of contract" and do not consider the reasonable expectations of the insured in interpreting unambiguous policy terms. *Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 524 (E.D. Va. 2011) (citations omitted).

"[T]he burden is on the policyholder at the outset to bring himself within the terms of the policy." *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 689–90 (E.D. Va. 2017). "Once the policyholder makes out a *prima facie* case, the burden shifts to the insurance company to prove an affirmative defense," including whether an exclusion applies. *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 800 F. Supp. 2d 722, 731 (E.D. Va. 2011) (citation omitted).

Virginia courts apply the "Eight Corners Rule" to evaluate a duty to defend, wherein the "four corners" of the underlying complaint compared against the "four corners" of the insurance policy control the analysis. *See Overlook*, 785 F. Supp. 2d at 513. The "potentiality rule,"

---

[39] The policies were delivered to Lindsay Automotive Group, in Alexandria, Virginia. Ex. A at 0008 [Common Declarations]. The policies must be interpreted in accordance with Virginia law. *See Penn. Nat'l Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 822 (E.D. Va. 2010).

recognizes that the "insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009) (citing *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007)). However, the duty "is not without limits," and courts recognize that "the underlying complaint must allege *some facts* on which the insured would be liable." *Id.* (emphasis added); *see also Overlook*, 785 F. Supp. 2d at 534 ("The Eight Corners Rule instructs the Court to look strictly at the underlying complaint."). The duty to defend is broader than the duty to indemnify, so "if there is no duty to defend, there can be no duty to indemnify." *Builders Mut. Ins. Co. v. Futura Group, LLC*, 779 F. Supp. 2d 529, 534 (E.D. Va. 2011).

## IV. ARGUMENT

### A. Zurich Owes No Obligations to Lindsay Under the Primary Policies

Lindsay seeks coverage under the Primary Policies, which generally consist of Commercial General Liability ("CGL") Coverage and the Auto Dealers Liability ("ADL") Coverage, subject to various endorsements discussed below.[40] The Underlying Action does not meet the respective insuring agreement requirements under any provision(s) of the Primary Policies. Accordingly, no coverage is available and summary judgment should be granted in Zurich's favor.

1. The CGL Coverage Part Does Not Apply to the Underlying Action

The coverage form for the CGL Coverage Part includes terms for Coverage A – Bodily Injury and Property Damage Liability and Coverage B – Personal and Advertising Injury Liability. Lindsay does not satisfy its burden to prove coverage under either coverage part.

---

[40] Lindsay's operative complaint in this coverage action focuses on the Primary Policies' ADL Coverage part, and the Umbrella Policies' Casualty Business Crisis Expense coverage part. However, Lindsay's complaint includes general references to "other covered harms as defined under the Zurich Policies." *See* Compl., ECF No. 1-1 at 12 [¶ 49]. To fully resolve all issues, Zurich moves for summary judgment under the Policies in whole.

*a. No Coverage is Due under Coverage A of the CGL Coverage Part*

The insuring agreement for Coverage A states that Zurich "will pay those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies."[41] The insuring agreement further states that the "bodily injury" or "property damage" must be caused by an "occurrence" during the policy period.[42] Under the Primary Policies, an "occurrence" is defined as an "accident."[43] The Underlying Action does not satisfy this insuring agreement for at least two reasons.

Primarily, the SAC does not allege "bodily injury" or "property damage." The SAC instead alleges that Lindsay engaged in deceptive and unfair practices in the advertising, marketing, promotion, sale, lease, or financing of motor vehicles, and that Lindsay's unlawful conduct caused consumers to sustain financial losses – i.e., "[a]s a result of these unlawful practices, Lindsay has overcharged consumers by millions of dollars."[44, 45] Lindsay's inability to meet this predicate requirement for coverage is confirmed by its own discovery responses, stating that "[t]he SAC principally alleges economic loss and does not expressly allege diagnosed physical injury, physical injury to tangible property, or loss of use of tangible property."[46]

---

[41] Ex. A at 0033 [¶ 1.a.]. The CGL coverage form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death" and "property damage" as "[p]hysical injury to tangible property…." *Id.* at 0045, 0047 [¶¶ 3, 17].
[42] *Id.* at 0033 [¶ 1.b.(1)].
[43] *Id.* at 0047 [¶ 13].
[44] *See* Ex. L at 0006 [¶ 19].
[45] Loss of money – pure economic injury – is not "bodily injury" or "property damage" under a liability insurance policy. *See e.g., Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 471 (E.D. Va. 2002) *aff'd*, 347 F.3d 89 (4th Cir. 2003) (purely economic loss does not constitute damage to or loss of use of tangible property); *Travelers Indem. Co. v. Kinney*, No. 93-2308, 1994 WL 276701, at *3 (4th Cir. Jun. 20, 1994) (South Carolina) (surveying courts holding loss of money is not "property damage" under liability policy); *Travelers Indem. Co. of Am. v. Jim Coleman Auto. of Columbia*, 236 F. Supp. 2d 513, 516–17 (D. Md. 2002) (purely economic loss is not "property damage").
[46] **Exhibit N**, Lindsay's Interrogatory Answers, at 0013-0014 [13.(a)].

In addition, the SAC does not allege an "occurrence." The Primary Policies define "occurrence" as "an accident,"[47] which the Supreme Court of Virginia has interpreted to mean an event that "happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous." *AES Corp. v. Steadfast Ins. Co.*, 283 Va. 609, 617–18 (2012). The SAC alleges that "Lindsay has systematically engaged in a pattern of unlawful conduct," that it has received numerous complaints about these unlawful practices, and that the individual defendants, Linday's "owners, operators, and executives," "are aware of the ongoing, unlawful practices described in [the SAC]."[48] Under Virginia law, "[i]f a result is the natural or probable consequence of an insured's intentional act, it is not an accident." *AES Corp.*, 283 Va. at 618. Because the SAC does not allege an "occurrence," Zurich owes no obligation under Coverage A of the CGL Coverage Part of the Primary Policies.

*b. No Coverage is Due under Coverage B of the CGL Coverage Part*

The CGL Coverage Part also includes terms for Coverage B – Personal and Advertising Injury Liability. For the reasons discussed *infra* at § IV.A.2.a.(2) [p. 13-14], the SAC does not seek damages because of "personal and advertising injury" resulting from an applicable offense.

Significantly, the availability of coverage under Coverage B is not at issue here because the CGL Coverage Part under all the Primary Policies is amended by endorsement titled, Exclusion – Personal and Advertising Injury, which precludes coverage under this coverage part all together. That exclusion states: "COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply."[49] Consistent with this endorsement, the declarations page of the

[47] Ex. A at 0047 [¶ 13.]
[48] Ex. L at 0005, 0010, 0016 [¶¶ 19, 28, 48].
[49] Ex. A at 0060 [Exclusion – Personal and Advertising Injury].

Primary Policies states "not covered" for the personal and advertising injury coverage.[50] Accordingly, Zurich owes no obligation under Coverage B of the CGL Coverage Part.

2. The ADL Coverage Part Does Not Apply to the Underlying Action

Lindsay seeks coverage under Section II of the ADL Coverage Form (General Liability Coverage), Section III of the ADL Coverage Form (Acts, Errors or Omissions Liability Coverage), the Customer Complaint Defense Coverage – Virginia endorsement, and the Designated Statute Defense – Virginia endorsement. For the reasons set forth below, Lindsay cannot not satisfy its burden to prove coverage under the ADL coverage part of the Primary Policies.

*a. No Coverage is Due under Section II of the ADL Coverage Part*

Section II of the ADL Coverage Form consists of Coverage A – "Bodily Injury And Property Damage Liability" coverage, and Coverage B – "Personal and Advertising Injury Liability" coverage. For several reasons, Lindsay cannot establish that either is implicated by the allegations in the Underlying Action, and Zurich is entitled to judgment as a matter of law.

(1) The Underlying Action Does Not Allege "Bodily Injury" or "Property Damage"

The insuring agreement for Section II, Coverage A – "Bodily Injury And Property Damage Liability" states that Zurich "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from your 'auto dealer operations'".[51] Section II.A. of the ADL Coverage Form does not apply for the same reasons that Coverage A of the CGL Coverage Form does not apply as

---

[50] Ex. A at 0030 [CGL Declarations].

[51] *Id.* at 0074 [¶ A.1.a.]. Certain terms in the ADL Coverage Form are amended by a "Unicover Auto Dealers Coverage Form Endorsement – Virginia" ("Unicover Endorsement"). *Id.* at 0122 [Unicover End.]. The ADL Coverage Form defines "property damage" to mean "damage to or loss of use of tangible property" and, as amended by the Unicover Endorsement, defines "bodily injury" to mean "bodily injury, sickness, disease, mental injury, mental anguish, shock, fright or humiliation, including death resulting from any of these." *Id.* at 0091 [¶ U], 0126 [¶ F].

discussed *supra* at § IV.A.1.a. [p. 10-11] – the Underlying Action does not seek damages because of "bodily injury" or "property damage" caused by an "accident."

(2) The Underlying Action Does Not Allege "Personal and Advertising Injury"

The insuring agreement for Section II, Coverage B – Personal and Advertising Injury states that Zurich will "pay all sums the 'insured' legally must pay as damages because of 'personal and advertising injury' to which this insurance applies, caused by an offense arising out of your 'auto dealer operations'".[52] As amended by the Unicover Endorsement, "personal and advertising injury" means injury arising out of one or more "offenses", including "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."[53]

Coverage for personal and advertising injuries is triggered where a third-party's action seeks damages *against* the insured for injury arising out of one or more specifically enumerated offenses. *See generally, State Farm Fire & Cas. Co. v. Franklin Ctr.*, No. 1:13-cv-957, 2014 WL 1365758, at *2–3 (E.D. Va. Apr. 4, 2014) (finding coverage where plaintiff alleged the insured made defamatory statements *about plaintiff*). Lindsay concedes that the SAC "does not expressly allege slander, libel, disparagement of another's goods or services, or another specifically identified publication offense."[54] Rather, the "Underlying Action is based in substantial part on advertisements and other publications concerning *Lindsay's own* pricing, financing, and add-on products."[55] Lindsay also concedes that the "mere presence of advertising allegations" does not itself bring the claim within the scope of personal and advertising injury coverage.[56]

[52] Ex. A at 0078 [¶ B.1.].
[53] *Id.* at 0126-0127 [¶ R.4.].
[54] Ex. N at 0014 [13.(b)].
[55] *Id.*
[56] *Id.*

Notwithstanding these concessions, Lindsay still seeks personal and advertising injury coverage for *its own* injuries from allegedly disparaging statements *about Lindsay.*[57] Lindsay's position goes against the purpose of third-party liability insurance. *See Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A. 2d 1021, 1033 (Md. 1993) ("A hallmark of the comprehensive general liability policy" is that it insures against injury done to a third party). Lindsay's claim that *it* has suffered injury as the target of adverse media coverage is not compensable under a third-party liability insurance policy. *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986) ("An insurer's third-party insurance obligation is its duty to defend the insured against claims by another, injured party and to indemnify the insured for losses sustained through such claims."). The SAC does not allege that any third party sustained injury arising from any "offense" committed by Lindsay.[58] As such, Lindsay cannot show that this coverage applies.

(3) <u>The Underlying Action is not a "Suit"</u>

In addition, neither coverage under Section II of the ADL Coverage Form applies because the Underlying Action does not qualify as a "suit" for damages to which this insurance potentially applies. The insuring agreements for both Coverage A and Coverage B provide that Zurich has no duty to defend a "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which the insurance does not apply.[59]

*First*, as amended by the Unicover Endorsement, the ADL Coverage Form defines "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies, are alleged."[60] As discussed *supra* at § IV.A.1.a. [p. 10-11] and § IV.A.2.a.(2) [p. 13-14], the Underlying Action does not allege "damages

---

[57] *See* Compl. ECF No. 1-1, at 12 [¶ 49].
[58] Ex. M.
[59] Ex. A at 0074 [¶ A.1.a.], 0078 [¶ B.1.].
[60] *Id.* at 0127 [¶ V.].

because of 'bodily injury', 'property damage' or 'personal and advertising injury'". Thus, the Underlying Action does not meet Section II of the ADL Coverage Form's definition for "suit".

*Second*, the definition of "suit" also specifically states that "'suit' *does not* mean an attorney general action, administrative actions or equitable actions."[61] The Underlying Action was brought by the Office of the Maryland Attorney General, Consumer Protection Division and, therefore, is clearly an "attorney general action." Lindsay does not dispute this limitation for the Division's allegations.[62] That the FTC is also a plaintiff does not invoke coverage. The FTC only sought prospective injunctive relief pursuant to Section 13(b) of the FTC Act, such that it is clearly an "equitable action".[63] Lindsay's own Motion for Partial Judgment on the Pleadings ("MJOP") filed in the Underlying Action acknowledged that the FTC's *could not* seek monetary damages:

> The FTC's claim for monetary relief in this case is foreclosed by binding Supreme Court precedent. As the [FTC] itself acknowledges, the Supreme Court held in *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021), that Section 13(b) of the FTC Act "does not grant the Commission authority to obtain equitable monetary relief."[64]

In response, the FTC agreed it was not seeking monetary relief against Lindsay.[65] Likewise, the Court found it to be "clear, *from the review of the complaint*, that [the FTC is] not seeking monetary damages."[66] Because the Underlying Action is both an "attorney general action" and an "equitable action", it is not a "suit" for purposes of Section II of the ADL Coverage Form.

---

[61] Ex. A at 0127 [¶ V.] (emphasis added).
[62] *E.g.*, Ex. N at 0014 [13.(c)].
[63] Ex. M at 0025 [¶ A.].
[64] *FTC, et al. v. Lindsay Chevrolet, LLC, et al.*, No. 1:24-cv-2362 (E.D. Va. Jun. 6, 2025), Lindsay MJOP Brief, ECF No. 67. **Exhibit O**, Lindsay Brief in Supp. of MJOP, at 0003-0004.
[65] *FTC, et al. v. Lindsay Chevrolet, LLC, et al.*, No. 1:24-cv-2362 (E.D. Va. Jun. 20, 2025), Pls.' Brief in Resp. to MJOP, ECF No. 86. **Exhibit P**, FTC and Division's Response Brief, at 0002.
[66] *FTC, et al. v. Lindsay Chevrolet, LLC, et al.*, No. 1:24-cv-2362 (E.D. Va. Jul. 2, 2025), Hearing Transcript, ECF No. 103. **Exhibit Q**, MJOP Hearing Transcript, at 0004.

(4) The Underlying Action did not Seek Potentially Covered Relief

Even if the Underlying Action were a "suit," coverage would still not be available because the SAC did not seek covered damages. As amended by the Unicover Endorsement, Section II of the ADL Coverage Form states that Zurich "will not pay for civil fines, assessments, penalties or equitable relief."[67] The SAC did not seek any relief that would survive those exceptions.

Lindsay asserts that the Underlying Action "presents potential exposure to consumer redress, restitution, and other monetary relief" that could constitute potentially covered damages under relevant policy terms.[68] An examination of actual allegations in the SAC belies that position. Specific relief sought in the SAC included: (a) "a permanent injunction", (b) "disgorgement and restitution to consumers of all moneys that [Lindsay] received in connection with their unfair or deceptive trade practices", (c) costs of the action and investigation, and (d) "a civil penalty pursuant to [the Maryland CPA]".[69] None of these forms of relief present a potentiality for coverage because the ADL Coverage Form as modified by the Unicover Endorsement expressly precludes coverage for "civil fines, assessments, penalties or equitable relief."[70]

[67] Ex. A at 0124 [¶ 1.a.], 0125 [¶ 2.a.].
[68] Compl. ECF No. 1-1 at 12 [¶ 51.].
[69] Ex. L at 0025-0026 [¶ A.-D.].
[70] Ample case law supports Zurich's position that all relief sought in the Underlying Action (and granted in the Final Order) constitute a "civil fine," "penalty," and/or "equitable relief". *See Comcast Corp. v. United States DOL*, No. 1:24-cv-1401, 2025 WL 2712424, at *7 (E.D. Va. Sept. 23, 2025) ("restitution" is an equitable remedy when "it is aimed at 'restoring the status quo and ordering the return of that which rightfully belongs' to the victim."); *Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, No. 6:12-cv-00023, 2013 WL 3989147, at *2 (W.D. Va. Aug. 2, 2013) (injunctive relief is "a quintessential form of equitable relief."); *Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 955 F. Supp. 598, 605 n.20 (E.D. Va. 1997) ("[A]n action for disgorgement of improper profits, while involving a monetary award, is 'traditionally considered an equitable remedy.'"); *Broadnax Mills v. Blue Cross & Blue Shield*, 876 F. Supp. 809, 817 (E.D. Va. 1995) ("Where a prayer for monetary relief actually seeks restitution or is 'intertwined' with equitable remedies, the nature of the relief is generally equitable."); *United States v. Saunders*, No. 2:09-cv-410, 2009 WL 10731083, at *1 (E.D. Va. Oct. 30, 2009) ("civil penalties … are not 'damages' payable to the victim, but fines or assessments payable to the government.").

*b. No Coverage is Due under Section III of the ADL Coverage Part*

Section III – "Acts, Errors Or Omissions" coverage of the ADL Coverage Form, as amended by the "Acts, Errors Or Omissions Coverage – Virginia" endorsement ("AEO Endorsement"), provides coverage for two categories of errors and omissions: (1) Truth in Lending/Truth in Leasing Errors And Omissions; and (2) Statute and Title Errors And Omissions.[71] Lindsay claims that the Underlying Action falls within the scope of Statute and Title Errors and Omissions coverage.[72] As amended by the AEO Endorsement, Section III of the ADL Coverage Form states that Zurich:

> will pay all sums that an "insured" legally must pay as "damages" because of any Truth in Lending/Truth in Leasing Errors And Omissions, Statute And Title Errors And Omissions, or Agents Errors And Omissions when a limit for such insurance coverage is shown in the Declarations.[73]

The insuring agreement for Statute and Title Errors And Omissions Coverage states that "we will pay for 'damages' resulting from any claim or 'suit' filed against you by or on behalf of[] [a] customer arising out of your 'auto dealer operations', because of an alleged violation of any specifically enumerated federal, state or local statutes.[74]

[71] Ex. A at 0142 [AEO Endorsement], 0151 [ADL Declarations]. Truth In Lending/Truth In Leasing Errors And Omissions coverage, and Statute And Title Errors And Omissions coverage are mutually exclusive (both provisions state this coverage "does not include any claim or 'suit' … [a]s described in" the other) and are subject to reduced limits of insurance (i.e., "$100,000 Per Claim or Suit") that are eroded by expenses and defense costs (i.e., the "duty to defend or settle ends when we have used up the applicable limit of insurance in the payment of judgments, settlements, expenses or defense costs[.]" *Id.* at 0142-0142 [¶¶ 1.a.(2), 1.b.(2), 2.b.], 0151 [ADL Declarations].

[72] Compl., ECF No. 1-1 at 5 [¶ 19]. Lindsay's complaint does not contend that coverage exists for Truth in Lending/Truth in Leasing Errors And Omissions or Agents Errors And Omissions. *Id.* Notwithstanding, either category would be precluded for the same reasons discussed herein. In addition, the Primary Policies do not provide coverage for Agents Errors And Omissions. Ex. A at 0151 [ADL Declarations].

[73] Ex. A at 0142 [¶ 1.].

[74] *Id.* at 0142-0143 [¶ 1.b.].

At least five aspects of the applicable policy language support Zurich's position that Acts, Errors or Omissions Liability Coverage is unavailable as a matter of law.

*First,* the Underlying Action does not involve any alleged violation(s) of the statutes enumerated in the AEO Endorsement which could potentially trigger coverage.[75] The SAC alleges that Lindsay engaged in unlawful, deceptive and unfair practices which violated "Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)," and the Maryland CPA.[76] Neither statute is identified in the AEO Endorsement, or related to the statutes enumerated therein.[77] In its sworn discovery responses, Lindsay conceded that the SAC "does not expressly plead a Truth in Lending or Truth in Leasing violation, an odometer or title violation, a Buyers Guide or Monroney Act violation, or another specifically enumerated error."[78] In the absence of such express allegations, Lindsay cannot meet its burden to prove that Acts, Errors or Omissions Liability Coverage potentially applies.

*Second,* the Underlying Action does not allege "damages" within the scope of coverage. Section III of the ADL Coverage Form, as amended by the AEO Endorsement, states that "damages" does *not* mean "civil penalties, fines, or assessments[.]"[79] The AEO Endorsement also

---

[75] Specifically enumerated statutes include alleged violations of any "federal, state, or local: (a) Odometer statute; (b) New or used auto damage or prior use disclosure statute; (c) Competitive auto parts statute; (d) Used car Buyers Guide, including Federal Regulation 455; (e) Statute requiring the display of automobile window stickers listing the manufacturer's retail price for the vehicle and any of its accessories, including the Monroney Act." Ex. A at 0142-0143 [¶ 1.b.(1)(a)–(e)]. Federal Regulation 455 refers to the Federal Trade Commission's "Used Motor Vehicle Trade Regulation Rule", which generally prohibits a used vehicle dealer from misrepresenting or failing to disclose the mechanical condition, warranty status, or warranty terms of a used vehicle. *See* 16 CFR § 455.1(a)-(b).
[76] Ex. L at 0001-0002, 0005-0006 [¶¶ 1-2, 19].
[77] *Compare*, *Id*.; *with* Ex. A at 0142-0143 [¶ 1.b.(1)(a)–(e)]. The SAC contains no mention of "Automobile window stickers," "odometer," "auto damage," "auto parts," "Used car Buyers Guide," or "Federal Regulation 455." Ex. L. The SAC does not allege that Lindsay misrepresented any car's warranty status, warranty terms, or mechanical condition. *Id*.
[78] Ex. N at 0015 [13.(e)].
[79] Ex. A at 0144 [¶ 5.1.].

contains a "Noncompensatory Damages" exclusion, which clearly and unambiguously excludes coverage for "[c]riminal fines or penalties imposed by law or regulation, or demands for injunctive or equitable relief."[80] As discussed *supra* at § IV.A.2.a.(4) [p. 16], the Underlying Action sought (a) injunctive relief, (b) disgorgement and restitution, (c) costs of bringing the Underlying Action, and (d) a civil penalty pursuant to the Maryland CPA.[81] These are all forms of equitable relief that do not constitute "damages", and are clearly precluded by the applicable policy language.[82]

*Third*, the Underlying Action is not a "suit". Section III of the ADL Coverage Form, as amended by the AEO Endorsement, states that "'Suit' does not mean an attorney general action, administrative action or equitable action."[83] Thus, for the same reasons discussed *supra* at § IV.A.2.a.(3) [p. 15], the Underlying Action is not a "suit" within the scope of coverage under Section III of the ADL Coverage Form as modified by the AEO Endorsement.

*Fourth*, the Underlying Action does not arise from "any actual or alleged *negligent* act, error or omission." Section III of the ADL Coverage Form, as modified by the Unicover Endorsement, defines "act, error or omission" as "any actual or alleged *negligent* act, error or omission committed by an 'insured' in the course of your 'auto dealer operations.'"[84] However, the SAC alleges that "Lindsay has systematically engaged in a pattern of unlawful conduct harming consumer", that "Lindsay has long been aware that its price claims mislead customers," and that "the Individual Defendants are aware of the ongoing, unlawful practices described in [the SAC]."[85] Lindsay contends that "[p]ortions of the SAC describe conduct that *could be* negligent,

---

[80] *Id.* at 0143 [¶ 2.5.].
[81] Ex. L at 0025-0026 [¶¶ A.-D.].
[82] Ex. A at 0144 [¶ 5.1.a.], 0143 [¶ 2.5.].
[83] *Id.* at 0145 [¶ 2.V.].
[84] *Id.* at 0126 [¶ E.1.B.] (emphasis added).
[85] Ex. L at 0005, 0010, 0016 [¶¶ 19, 28, 48].

unintentional, or based on miscommunication or oversight."[86] But the SAC presents no allegations of negligence whatsoever – the terms "negligent," "unintentional," "miscommunication," and "oversight" are not mentioned once in the SAC.[87] Such a "mere possibility does not rise to the level of potentiality." *See generally, CACI Int'l.*, 566 F.3d at 159 (noting that "the potentiality rule does not require [courts] to abandon the rule of reason.") Like the insured in *CACI*, Lindsay's position "finds no grounding in the language of the complaint[]" and, as such, Lindsay cannot sustain its burden of proof to establish coverage under Section III of the ADL Coverage Form.

*Fifth*, even if Lindsay could show a potentiality for coverage under Section III of the ADL Coverage Form – that the Underlying Action (i) involved violation(s) of any enumerated statute(s), (ii) qualified as a "suit", (iii) sought potentially covered "damages", and (iv) arose from any "negligent" acts or omissions – coverage would still be clearly and unambiguously precluded by the "Criminal, Fraudulent, Malicious, Dishonest Or Intentional Acts" exclusion which states, that "[t]his insurance does not apply to:"

> Damages arising out of any criminal, fraudulent, malicious, dishonest or intentional "act, error or omission" by an "insured", including the willful or reckless violation of any law or regulation.[88]

The SAC's claims, including that Lindsay "systematically engaged in a pattern of unlawful" deceptive sales practices in violation of the FTC Act and Maryland CPA, fit squarely within this exclusion.[89] While an exception exists for any insured who did not personally commit, participate in, acquiesce to, or "[r]emain passive after having knowledge of" such act, error or omission, the SAC clearly asserts that Lindsay's president, CFO, and general manager have long been aware of

---

[86] Compl. ECF No. 1-1 at 7 [¶ 26].
[87] Ex. L.
[88] Ex. A at 0083 [¶ B.1.].
[89] Ex. L at 0005-0006 [¶ 19].

the "ongoing, unlawful practices described in [the SAC]."[90] Accordingly, even if Lindsay could establish a potentiality for coverage under Section III of the ADL Coverage Form – it cannot – any such coverage would be clearly and unambiguously excluded.

*c. No Coverage is Due under the Customer Complaint Defense Endorsement*

A "Customer Complaint Defense Coverage – Virginia" endorsement modifies coverage under the Auto Dealers Coverage Form and offers reimbursement coverage,[91] subject to limits of $25,000 per "suit" filed against the insured by or on behalf of a customer arising out of "[y]our sale, lease, rental, service, or repair of your products or work as part of your auto dealer operations" or "promotion of your products or work as part of your auto dealer operations."[92] This endorsement defines "suit" to mean a civil action for "damages", but *not* an "attorney general action."[93] And the endorsement's definition for "'damages" does *not* mean civil penalties, fines, assessments, or equitable remedies.[94]

*First*, for the reasons discussed *supra* at § IV.A.2.a.(3)–(4) [p. 15-16], Zurich owes no obligation under the Customer Complaint Defense Coverage endorsement because the Underlying Action does not qualify as a "suit" and did not seek "damages" as those terms are defined in the endorsement.

*Second*, even if the Underlying Action were a "suit" for potentially covered "damages", coverage would still be precluded by a "Criminal, Fraudulent, Malicious, Dishonest Or Intentional

---

[90] *Compare*, Ex. A at 0083-0084 [¶ B.1.a.–d.]; *with* Ex. L at 0016 [¶ 48.].
[91] The Customer Complaint Defense Coverage endorsement states "[w]e will *reimburse*" certain costs and expenses an insured incurs in defending itself in a "suit" subject to a $25,000 per "suit" limit. Ex. A at 0112 [¶ A.1., Schedule]. This coverage part does not provide a contractual duty to defend. *See generally, Lerner v. Gen. Ins. Co. of Am.*, 219 Va. 101, 103–04 (1978) (Insurer's right and duty to defend arises from provision in policy providing both the right and the duty); *see also*, 14 Couch on Ins. § 200:4 (the duty to defend is distinct from the duty to reimburse defense costs).
[92] Ex. A at 0112 [¶ A.1.a.–b.].
[93] *Id.* at 0114 [¶ E.2.V.].
[94] *Id.* [¶ E.1.a.–c.].

Acts" exclusion in the Customer Complaint Defense Coverage endorsement, that is identical to that in Section III of the ADL Coverage Form discussed *supra* at § IV.A.2.b. [p. 20-21].[95]

*d. No Coverage is Due under the Designated Statute Defense Endorsement*

A "Designated Statute Defense – Virginia" endorsement modifies coverage under the ADL Coverage Form and offers reimbursement coverage, subject to limits of $25,000 per "suit" arising out of the alleged violation of any enumerated statute(s).[96]

*First*, as discussed *supra* at § IV.A.2.a.(3)–(4) [p. 15-16], Zurich owes no reimbursement obligation to Lindsay under the Designated Statute Defense endorsement based on the endorsement's definitions for "suit" and "damages" wherein, "'suit' does not mean an attorney general action", and "'damages' does not mean" civil penalties, fines, assessments, or equitable remedies.[97]

*Second*, there is also no coverage under the Designated Statute Defense endorsement because the Underlying Action does not asserted an alleged violation of any enumerated statutes.[98] The Underlying Action alleges violations of Section 5(a) of the FTC Act and the Maryland CPA,

---

[95] Ex. A at 0112 [¶ B.1.].
[96] *Id.* at 0115 [¶ A.1.–10.]. The Designated Statute Defense endorsement states "[w]e will *reimburse*" certain costs and expenses, subject to a $25,000 per "suit" limit, that an insured incurs in defending itself in a "suit" for a violation of an enumerated statute. *Id.* [¶ A.1.–10.]. This limited reimbursement coverage does not provide a "duty to defend. *See generally, Lerner*, 219 Va. at 103–04 (1978) (the right and duty to defend arises from provision in the policy); *see also*, 14 Couch on Ins. § 200:4 (the duty to defend is distinct from the duty to reimburse costs).
[97] Ex. A at 0116 [¶¶ D.1., 2.V.].
[98] The statutes identified in the Designated Statute Defense endorsement include: (1) Statutes governed, enforced, or regulated by the Office of Foreign Assets Control; (2) Statutes Controlling the Assault of Non-Solicited Pornography and Marketing Act; (3) The Telephone Consumer Protection Act; (4) The Gramm Leach Billey Act; (5) Fair Credit Reporting Act; (6) Equal Credit Opportunity Act; (7) Federal Patent Infringement Law; (8) Drivers Privacy Protection Act; (9) Dodd-Frank Wall Street Reform and Consumer Protection Act; and (10) Any other federal, statute, or local statute, act or law, involving the same alleged violations that are addressed by the statutes, acts or laws listed above. *Id.* at 0115 [¶ A.1.–10.].

which are not identified in the endorsement, and do not regulate the same conduct.[99] Lindsay confirms that the Underlying Action does not "expressly plead a violation of an enumerated statute" and that its claim for Designated Statute Defense coverage applies "only to the extent the facts alleged can be shown to involve the same allege violations addressed by an enumerated statute."[100] Absent any allegation in the SAC implicating the Designate Statute Defense endorsement, Lindsay cannot satisfy its burden of proof to show this coverage applies.

*e. Zurich Owes No Indemnity Obligation Under Any Part of the Primary Policies*

Where "there is no duty to defend *ab initio*, there can be no duty to indemnify." *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 426–27 (E.D. Va. 2000). For the many reasons discussed herein, Zurich owes no duty to defend Lindsay against the allegations in the Underlying Action. As such, Zurich cannot owe a duty to indemnify Lindsay. *Id.*

Notwithstanding, the Final Order resolves all doubt as to the fact that Zurich owes no duty to indemnify Lindsay. The judgment entered in the Final Order provided for (i) various permanent injunctions; (ii) restitution for "consumer redress"; and (iii) penalties to be paid to, and utilized by, "the Maryland Attorney General for future consumer protection enforcement or consumer education, or any other lawful public purpose designated by the Maryland Attorney General."[101] The Primary Policies do not provide coverage for this relief under any provision(s) therein.

The ADL Coverage Form, as modified by the Unicover Endorsement and the AEO Endorsement, the Customer Complaint Defense Coverage endorsement, and the Designated Statute Defense endorsement, all contain language limiting the scope of potentially covered damages. Specifically, discussed *supra,* these coverage forms preclude coverage for all relief

---

[99] *Compare*, Ex. L; *with* Ex. A at 0115 [¶ A.1.–10.].
[100] Ex. N at 0015 [13(d)].
[101] Ex. M at 0005-0011 [§§ I-V.].

contemplated in the Final Order – civil penalties, fines, and equitable relief.[102] These terms foreclose any duty to indemnify Lindsay for all relief obtained in the Final Order.[103]

**B. Zurich Owes No Obligation to Lindsay under the Umbrella Policies**

Lindsay also seeks coverage under one or more of the Umbrella Policies, which include Coverage A – Excess Follow Form Liability Insurance and Coverage B – Umbrella Liability Insurance, subject to limits of $20,000,000 per occurrence and $60,000,000 aggregate, as well as Coverage C – Casualty Business Crisis Expense Coverage, subject to a $250,000 aggregate limit.[104] Summary judgment should be granted in Zurich's favor because Lindsay cannot satisfy its burden to prove that any coverage part under the Umbrella Policies applies.

1. <u>Coverage A – Excess Follow Form Liability Insurance Does Not Apply</u>

The insuring agreement for Coverage A – Excess Follow Form Liability Insurance states,

> Under **Coverage A**, we will pay on behalf of the **Insured** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, this policy includes:
>
> 1. The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent with or do not conflict with the terms and conditions referred to in Paragraph 2. below; and
>
> 2. The terms and conditions that apply to **Coverage A** of this policy.
>
> Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of

[102] Ex. A at 0114 [Customer Complaint Defense Coverage endorsement], 0116 [Designated Statute Defense endorsement], 0124-0125 [Unicover Endorsement], 0144-0145 [AEO Endorsement].

[103] No coverage exists for any relief granted in the Final Order, which consisted of injunctions, consumer redress, and a penalty payable to the Maryland Attorney General. *See generally, Comcast Corp.*, 2025 WL 2712424, at *7 ("restitution" is an equitable remedy where "aimed at 'restoring the status quo and ordering the return of that which rightfully belongs' to the victim."); *Hanwha Azdel, Inc.*, 2013 WL 3989147, at *2 (injunctive relief is "a quintessential form of equitable relief."); *Saunders*, 2009 WL 10731083, at *1 ("civil penalties … are not 'damages' payable to the victim, but fines or assessments payable to the government.").

[104] Ex. F at 0007 [Umbrella Declarations].

> applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages. . . .[105]

Because no coverage is available under the Primary Policies, no coverage is available under Coverage A – Excess Follow Form Liability Insurance.[106] *See Princeton Excess & Surplus Lines Ins. Co. v. Immigr. Ctrs. of Am. - Farmville, LLC*, No. 3:12-cv-895, 2013 WL 6246366, at *8 (E.D. Va. Nov. 21, 2013) ("The only purpose of the follow-form provision is to perfectly align the risks covered by the excess and primary insurers").

2. <u>Coverage B – Umbrella Liability Insurance Does Not Apply</u>

The insuring agreement for Coverage B – Umbrella Liability Insurance states as follows:

> Under **Coverage B**, we will pay on behalf of the **Insured** those damages the **Insured** becomes legally obligated to pay by reason of liability:
>
> 1. Imposed by law because of **bodily injury**, **property damage**, or **personal and advertising injury**…
>
> ***
>
> covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an **occurrence** happening anywhere….[107]

---

[105] Ex. F at 0012 [¶ I.A.].

[106] While no coverage exists under *any parts* of the Primary Policies, underlying coverage under the Acts, Errors or Omissions Liability Coverage Part, the Customer Complaint Defense Coverage endorsement, and the Designated Statute Defense endorsement are not even at issue in the analysis of coverage under Coverage A – Excess Follow Form Liability Insurance because this excess insurance does not apply above the limits of these Primary Policy coverage parts. Coverage A only applies for "damages covered by this insurance in excess of the total applicable limits of **underlying insurance**." *Id.* at 0012 [¶ I.A.]. "Underlying insurance" means "the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy." *Id.* at 0021 [¶ V.A.7.]. And the Schedule of Underlying Insurance contained in the Umbrella Policies does not identify underlying limits for Acts, Errors or Omissions Liability Coverage, Customer Complaint Defense Coverage, or Designated Statute Defense Coverage. *Id.* at 0010 [Schedule]. Accordingly, Coverage A – Excess Follow Form Liability Insurance does not apply above these coverage parts that are not "underlying insurance". *Id.* at 0012 [¶ I.A.].

[107] *Id.* at 0012 [¶ I.B.]. The Umbrella Policies define "occurrence" for purposes of Coverage B – Umbrella Liability Insurance with respect to "bodily injury" and "property damage" to mean "an accident", and with respect to "personal and advertising injury" to mean "a covered offense." *Id.* at 0024 [¶ V.C.11.]. The Umbrella Policies' definition for "personal and advertising injury" includes a list of "offenses" including, in relevant part, "injury . . . arising out of . . . [o]ral or

For the reasons discussed *supra* at § IV.A.1.a. [p. 10] and § IV.A.2.a.(2) [p. 13-14], the Underlying Action does not allege any bodily injury, property damage, or personal and advertising injury. *See generally, Am. Online, Inc.*, 207 F. Supp. 2d at 471 (purely economic losses do not constitute loss to tangible property). Again, Lindsay concedes that the SAC does not alleges personal and advertising injury arising out of any offense committed by Lindsay, but Lindsay nonetheless seeks coverage for *its own injuries* stemming from allegedly disparaging written publications *about it*.[108] Lindsay's claim that it sustained an injury as the target of adverse media coverage is not compensable under its liability insurance policy. *See generally, A & E Supply Co.*, 798 F.2d at 676 ("An insurer's third-party insurance obligation is its duty to defend the insured against claims by another…."). So, Coverage B – Umbrella Liability Insurance does not apply.

Also, for the reasons discussed *supra* at § IV.A.1.a. [p. 11] and § IV.A.2.a.(2) [p. 13-14], the SAC does not allege injury or damage caused by an "occurrence" – "an accident" or "a covered offense" – as required under the insuring agreement.[109] *See generally, AES Corp.*, 283 Va. at 617–18 (interpreted "accident" to mean an event that "happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous."). As a result, Lindsay cannot establish coverage under Coverage B of the Umbrella Policies.

3. Coverage C – Casualty Business Crisis Expense Coverage Does Not Apply

The insuring agreement for Coverage C – Casualty Business Crisis Expense provides a separate limit under the Umbrella Policies for reimbursement of certain "casualty business crisis

---

written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Ex. F at 0024 [¶ V.C.12.].

[108] *Compare*, Ex. N at 0014 [13(b)]; *with* Compl. ECF No. 1-1, at 12 [¶ 49].

[109] Ex. F at 0024 [¶ V.C.11.].

expenses".[110] Zurich owes no obligation under Coverage C because Lindsay did not comply with the applicable notice condition and all of Lindsay's alleged "casualty business crisis expenses" were incurred before notice was first given to Zurich. Even if notice was timely – there is no dispute it wasn't – coverage is still unavailable because the Underlying Action is not a "casualty business crisis" and it does not arise out of any "occurrence".

*a. Lindsay Failed to Provide Timely Notice of any "Casualty Business Crisis"* [111]

Coverage C is not available because Lindsay failed to satisfy the applicable notice condition. Coverage C under the Umbrella Policies is subject to the following condition:

> You must see to it that we are notified of a **casualty business crisis** as soon as practicable after it first commences. … We will not be liable for **casualty business crisis expense** incurred prior to, … the date notice of such **casualty business crisis** is first given to us.…[112]

The Umbrella Policies provide further that, "[f]or purposes of **Coverage C**, a **casualty business crisis** will first commence when your **principal** first become aware of the **occurrence**.…"[113]

Lindsay's discovery responses confirm that it knew the FTC was investigating Lindsay's conduct at issue in the Underlying Action "no later than on or around April 1, 2023."[114] Lindsay's obligation to provide Zurich notice began as soon as it learned "of an occurrence that *may* lead to a claim and implicate the policy." *See generally, Hutcheson*, 2021 WL 5412274, at *4 (emphasis

[110] Coverage C does not provide any defense obligation: "[u]nder **Coverage C**, we do not assume any duty to control the investigation and settlement of any claim, or defense of any **suit** that may arise from a covered **casualty business crisis**." *Id.* at 0014 [¶ III.B.]. Coverage C provides for reimbursement of specified "casualty business crisis expenses", subject to a $250,000 limit. Ex. F at 0007 [Umbrella Declarations], 0013 [¶ I.C.].

[111] The issue of Lindsay's untimely notice is appropriate for resolution on summary judgment where the facts are undisputed and certain. *See generally, Va. Farm Bureau Mut. Ins. Co. v. Sutherland*, No. 7:03-cv-00122, 2004 WL 2360162, at *2 (W.D. Va. Oct. 19, 2004); *Nationwide Prop. & Cas. Ins. Co. v. Hutcheson*, No. 2:20-cv-543, 2021 WL 5412274, at *3-4 (E.D. Va. Oct. 15, 2021) (granting summary judgment where notice was untimely as a matter of law).

[112] Ex. F at 0030 [¶ C.1.].

[113] *Id.* at 0025 [¶ D.1.].

[114] Ex. N at 0006 [4] (emphasis added).

in original). Yet Lindsay did not provide Zurich with notice about the FTC investigation until March 21, 2025, nearly two years later.[115] Further yet, Lindsay did not notify Zurich about any alleged "casualty business crisis" related thereto until July 16, 2025.[116] When it did provide notice to Zurich, Lindsay had already hired its alleged "crisis-management consultants" – without Zurich's knowledge or approval – and incurred the alleged "casualty business crisis expenses" at issue.[117] That is, Lindsay's sworn ledger of claimed expenses for "public-relations advice, crisis-management services, media monitoring, communications planning, and related services in response to the filing and publicity surrounding the Underlying Action," confirms that all were incurred between December 19, 2023 and January 15, 2025 – before notice was given to Zurich.[118]

Lindsay acknowledges that the Umbrella Policies require, "a Zurich-approved casualty business crisis advisor, notice as soon as practicable, and limits recovery to qualifying expenses incurred after notice and within the policy's 180-day period."[119] Yet Lindsay waited over two years to notify Zurich, after it had already hired alleged "crisis-management consultants" and incurred the purported "casualty business crisis expenses" at issue.[120] Given this timeline, Lindsay cannot show compliance with the condition to Coverage C requiring that Zurich be "notified of a **casualty business crisis** as soon as practicable after it first commences."[121] *See generally*, *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 709 F. Supp. 2d 441, 449 (E.D. Va. 2010) (the insured has

---

[115] Ex. K-1 at 0001.

[116] Ex. K-3 at 0003. Lindsay did not notify Zurich about a "casualty business crisis" with its original March 21, 2025 claim submission, nor its June 12, 2025 response to Zurich's initial denial letter. Ex. K-1 at 0001; Ex. K-3 at 0001-0002.

[117] Ex. N at 0024, 0030 [20, Ledger].

[118] *Compare* Ex. K-1 at 0001; *and* K-3 at 0003; *with* Ex. N at 0024, 0030 [20, Ledger].

[119] Ex. N at 0006 [4].

[120] *Id.* at 0019, 0024, 0030 [16, 20, Ledger]; Ex. K-1 at 0001; Ex. K-3 at 0003.

[121] *See* Ex. F at 0030 [¶ C.1.].

the burden to produce evidence that it has satisfied a policy's conditions precedent); *Hutcheson*, 2021 WL 5412274, at *4 (delay of nearly 17 months was unreasonable as a matter of law).

Even if Lindsay had evidence to suggest this two-year delayed notice was somehow timely, the applicable condition precludes coverage for "casualty business crisis expenses" incurred prior to the date Lindsay first notified Zurich.[122] Here, ***all*** of Lindsay's alleged "casualty business crisis expenses" were incurred before notice was given to Zurich.[123] Therefore, Zurich cannot be liable, and is entitled to judgment that it owes no obligation under Coverage C for these expenses.

*b. The Underlying Action is Not a "Casualty Business Crisis" Arising From any "Occurrence"*

Coverage C also does not apply because the Underlying Action is not a "casualty business crisis" arising from any "occurrence".

The Umbrella Policies define "casualty business crisis" to "include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths or injuries, burns, dismemberment, traumatic brain injury, paraplegia, or contamination of food, drink or pharmaceuticals."[124] Negative publicity associated with Lindsay's alleged unfair and deceptive trade practices is not a *casualty* business crisis. While the Umbrella Policies provide a non-exhaustive list of qualifying crises, each event is one that (1) would be covered under Coverage A or Coverage B, and (2) is of a type that caused, or has the potential to cause, catastrophic physical damage or bodily injury.[125] None of the referenced events remotely implicate unlawful, unfair and

---

[122] "We will not be liable for **casualty business crisis expense** incurred prior to, … the date notice of such **casualty business crisis** is first given to us…." Ex. F at 0030 [¶ C.1.].
[123] *Compare*, Ex. N at 0024, 0030 [20, Ledger]; *with* Ex. K-1 at 0001; *and with* Ex. K-3 at 0003.
[124] Ex. F at 0025 [¶ D.1.].
[125] The interpretive canon *noscitur a sociis*, "which dictates that words or terms should be understood by reference to those that accompany them," is instructive. This non-exhaustive list of qualifying crisis events requires that any unlisted event(s) must similarly involve catastrophic physical damage or bodily injury. *See generally*, *Res. Bank v. Progressive Cas. Ins. Co.*, 503 F. Supp. 2d 789, 796 (E.D. Va. 2007) ("Viewing the list any other way—e.g., as a mixed list of

deceptive trade practices like those at issue in the Underlying Action, which are not covered under Coverage A or Coverage B for the reasons discussed *supra* at § IV.B.1. [p. 25] and § IV.B.2. [p. 26]. In the absence of a "casualty business crisis", Zurich has no obligation under Coverage C.

This result is supported by the Umbrella Policies' definition which states further that "[f]or purposes of **Coverage C**, a **casualty business crisis** will first commence when your **principal** first become aware of the **occurrence**…."[126] "Occurrence" is specifically defined by the Umbrella Policies for purposes of a claim for Coverage A or Coverage B.[127] As discussed *supra* at § IV.A.1.a. [p. 10-11], § IV.A.2.a.(2) [p. 13-14], the Underlying Action did not allege "bodily injury" or "property damage" caused by an "accident", or "personal and advertising injury" resulting from any enumerated "offenses." Where the alleged unlawful and deceptive advertising practices at issue in the Underlying Action clearly do not constitute an "occurrence", no "casualty business crisis" could commence as necessary to trigger any obligation under Coverage C. Accordingly, Coverage C cannot apply.

## V. CONCLUSION

This case does not present any disputed material facts. Zurich owes no obligation to defend, indemnify, or reimburse costs incurred by Lindsay in connection with the Underlying Action. Because Lindsay cannot satisfy the burden to prove coverage, Zurich respectfully requests that the Court grant summary judgment in its favor, and grant it all other relief deemed just and proper.

---

harms, injuries, and causes of action, or a list of causes of action exclusively—does not allow the terms included therein to be grouped together coherently as a listing of like items.").

[126] Ex. F at 0025 [¶ D.1.].

[127] For purposes of Coverage A, "[**o**]**ccurrence** means a covered event as defined in **underlying insurance**." *Id.* at 0021 [¶ B.4.]. For purposes of Coverage B, occurrence means, "[w]ith respect to **bodily injury** or **property damage** liability, an accident…." or "[w]ith respect to **personal and advertising injury**, a covered offense." *Id.* at 0024 [¶ C.11.].

Dated: August 18, 2026

Respectfully Submitted by:

James B. Harper (VSB #101271)
COZEN O'CONNOR
Two James Center
1021 E Cary Street, Suite 1420
Richmond, VA 23219
Tel.: 804.762.6920
Fax.: 804.762.6950
jharper@cozen.com

***Counsel for Defendants***
***Zurich American Insurance Company***
***American Guarantee and Liability Insurance Company***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 18, 2026, a true and correct copy of the foregoing document was delivered to the following parties in the manner indicated below:

**By eService and Email:**

Brad D. Weiss (VSB No. 22389)
bweiss@cwattorneys.com
Elizabeth A. Dwyer (VSB No. 87486)
edwyer@cwattorneys.com
CHARAPP & WEISS, LLP
Tel.: 571-346-7505
Fax: 703-956-3009
*Counsel for Plaintiffs*

James B. Harper